*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 04a0409p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

ROBERT RELFORD,

　　　　　　　　　*Plaintiff-Appellant,*

　　*v.*

LEXINGTON-FAYETTE URBAN COUNTY GOVERNMENT,

　　　　　　　　　*Defendant-Appellee.*

No. 03-5600

---

Appeal from the United States District Court
for the Eastern District of Kentucky at Lexington.
No. 98-00334—Joseph M. Hood, District Judge.

Argued: September 22, 2004

Decided and Filed: November 24, 2004

Before: KEITH, MOORE, and GILMAN, Circuit Judges.

---

## COUNSEL

**ARGUED:** James M. Morris, MORRIS & MORRIS, Lexington, Kentucky, for Appellant. Robert L. Roark, WALTHER, ROARK, GAY & TODD, Lexington, Kentucky, for Appellee. **ON BRIEF:** James M. Morris, MORRIS & MORRIS, Lexington, Kentucky, for Appellant. Robert L. Roark, Beth A. Bowell, WALTHER, ROARK, GAY & TODD, Lexington, Kentucky, for Appellee.

---

## OPINION

---

　　　　DAMON J. KEITH, Circuit Judge. On August 12, 1998, the Plaintiff-Appellant, Robert Relford, filed a civil complaint in which he charged the Defendant-Appellee, the Lexington-Fayette Urban County Government ("County"), pursuant to 42 U.S.C. § 1983, with having violated his constitutional rights in the administration of its employee drug testing policies and programs. Relford complains that the County subjected him to an unlawful search in violation of the Fourth Amendment by failing to abide by its written procedures and by requiring him to undergo random drug testing. He also claims the County deprived him of due process in violation of the Fifth and Fourteenth Amendments when, according to him, it constructively discharged him from employment.

　　　　Following discovery, the parties filed cross motions for summary judgment. On July 17, 2002, the district court dismissed Relford's due process claims because it determined that he had resigned from his employment voluntarily, had not been constructively discharged, and had received all of the process he was due inasmuch as he was given notice of and an opportunity to respond to the County's petition for his termination. On the same day, the district court granted a period of leave to the parties and called upon them

1

to file additional pleadings addressing whether an arrest for possession of drug paraphernalia constituted reasonable grounds for randomly drug testing a government employee. On March 21, 2003, subsequent to the submission of additional briefing papers by each of the parties, the district court entered a summary judgment as a matter of law in favor of the County after finding that, under the circumstances of this case, the County had reasonable suspicion to support its order requiring Relford to undergo random drug testing.

In this appeal, Relford asserts that the district court erred in awarding summary judgment to the County. For the reasons set forth below, we AFFIRM the judgment of the district court.

## FACTUAL BACKGROUND

Relford began work as an electrician with the County in July 1993. He, however, was arrested and imprisoned on May 29, 1997, on charges of criminal trespass and possession of drug paraphernalia. As a result of his incarceration, Relford was unable to report to work on the following day, and he commissioned a friend to help him devise an excuse that would innocently explain his absence from work. Shortly thereafter, this friend apparently contacted the County and falsely reported that Relford's absence was due to sickness. Unfortunately for Relford, his supervisor subsequently learned of his arrest and his improper use of sick leave. He suspended Relford for a period of five (5) days and issued him a notification of Reasonable Cause Testing ("RCT").

The issuance of a RCT notice is governed by the County's Alcohol and Drug Free Workplace Guidelines and Procedure Handbook, which provides, in pertinent part, as follows:

Alcohol and Drug Screening shall be conducted under the following circumstances:
. . .
E.    Reasonable Cause Testing (RCT) - Employees will be tested for drugs or alcohol when reasonable suspicion exists to support a belief that the employee is under the influence of drugs or alcohol or that the employee's behavior or work performance has been affected by drugs or alcohol. The basis for the decision shall be documented, in writing, by at least two (2) trained supervisors or by professional law enforcement or medical personnel. A determination will be based upon observation and documentation of:

1.    Detection of an alcoholic substance emitting from the employee's breath. This shall include a detection of a "hang-over" odor.

2.    Observation(s) of the employee's speech being unusually slurred, or noticeably different without a proper medical reason being given.

3.    Observation(s) of the employee's actions or conduct as being noticeably different or impaired and not consistent with normal conduct and without proper explanation.

4.    Observation(s) that the employee's appearance, in conjunction with the above, indicates that the employee is impaired.

At the request of the Division Director or the Director of Human Resources, the observed employee may be required to submit to an independent blood/breath/urine test to determine if the employee is impaired. The requested testing is to be done within two (2) hours but no later than eight (8) hours after the observation. All results of such testing will be delivered immediately to the Director of Human Resources.

Joint Appendix ("J.A.") at 39. The RCT notice that was issued to Relford directed him to proceed immediately to an urgent treatment center where he would be given a drug and alcohol test. The RCT notice indicated that it was being issued on the basis of his "recent police arrest for 'possession of a controlled substance and drug paraphernalia.'" *Id*. at 45. Inasmuch as his arrest did not include a charge for possession, the RCT notice was technically inaccurate.

Relford refused to submit to the RCT. Claiming that his refusal constituted grounds for dismissal, the County filed charges with the Civil Service Commission ("Commission") requesting that Relford's employment be terminated. On October 15, 1997, the Commission held a hearing, during which it gave the parties an opportunity to present evidence in favor of their respective positions. On the same day, the Commission issued an Order finding that the five-day suspension which had been levied against Relford was justified because his actions constituted an "abuse of sick leave and falsification of a report." *Id*. at 46. The Commission further found that under the County's drug testing policies and guidelines "reasonable grounds existed for requesting Mr. Relford to submit to a drug test." *Id*. The Commission, however, opined that the County (1) "failed to adequately advise Mr. Relford of the grounds for which he was requested to take the drug test;" (2) "may have . . . misled Mr. Relford as to those grounds and the consequences of his failure to take the test, by and through the obviously inaccurate or defective" notice; and (3) used "guidelines in regard to 'reasonable cause testing' [that] are confusing." *Id*. Thus, the Commission ordered that Relford's discipline "be reduced from dismissal to an additional 30 days suspension," and that he "submit forthwith to the Employee Assistance Program (EAP) for evaluation for drug dependency." *Id*.

Relford returned to work and participated in the EAP. The County's EAP is directed exclusively to the "earliest possible diagnosis and treatment for substance or alcohol abuse." *Id*. at 32. Through the EAP, Relford was subjected to drug dependency counseling and evaluation. More importantly, all EAP participants undergo drug-testing in random order. Contemporaneously with his return to work and participation in the EAP, Relford appealed the Commission's order to the Fayette Circuit Court. On December 1, 1997, while his appeal was pending, Relford was randomly selected for drug testing from among the pool of EAP participants. He submitted to the screening and tested positive for the use of illegal narcotics. On the basis of this test result, the County filed a second petition for Relford's termination with the Commission.

On January 21, 1998, prior to the Commission holding a hearing on the second petition, Relford resigned from his employment with the County, indicating that he had found another job. Nearly six months later (on July 15, 1998), the Fayette Circuit Court reversed the Commission's October 15 order because it determined that the County acted arbitrarily and had not complied with its own drug testing procedures. Relford subsequently filed the present cause of action in the United States District Court for the Eastern District of Kentucky.

## DISCUSSION

Relford contends that the district court erred in resolving the parties' cross-motions for summary judgment. In reviewing a grant of summary judgment on cross-motions for summary judgment, we apply the same legal standards as the district court. *Benefits Comm. of Saint-Gobain Corp. v. Key Trust Co. of Ohio, N.A.*, 313 F.3d 919, 925 (6th Cir. 2002). A request for summary judgment should be granted only where the pleadings and evidence "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In evaluating each party's motion, the court must view all facts and inferences in the light most favorable to the nonmoving party. *Lenning v. Commercial Union Ins. Co.*, 260 F.3d 574, 581 (6th Cir. 2001). Because we consider only questions of law, our standard of review is de novo. *Benefits Comm. of Saint-Gobain*, 313 F.3d at 925.

Relford contends the district court erroneously granted summary judgment in favor of the County because, according to him, the evidence and applicable law establishes that the County violated (1) his right to be free from unreasonable search and seizure, as protected by the Fourth Amendment of the United States

Constitution, and (2) his right to due process of law, as protected by the Fifth and Fourteenth Amendments of the United States Constitution.

## I.

With regard to his claim of a Fourth Amendment violation, Relford asserts that the district court failed to adhere to the determinations of the Fayette Circuit Court, improperly held that he had not suffered a constitutional violation because he did not submit to the RCT, and erred in concluding as a matter of law that the County had just cause to demand drug testing of him. The district court held that the mandated drug testing of Relford as an EAP participant was reasonable under the circumstances.

The central question pending before this court is whether the County violated Relford's Fourth Amendment right to be free from unreasonable search and seizure when it mandated his participation in the drug and alcohol abuse EAP and thereby subjected him to random drug testing. The Fourth Amendment provides, in pertinent part, that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, . . . but upon probable cause." U.S. Const. amend. IV. In assessing whether the right against unreasonable searches and seizures has been violated, the court must consider whether the action is "attributable to the government," and amounts to a "search" or "seizure" for Fourth Amendment purposes. *See Skinner v. Ry. Labor Executives' Ass'n*, 489 U.S. 602, 614 (1989) ("Before we consider whether the tests in question are reasonable under the Fourth Amendment, we must inquire whether the tests are attributable to the Government or its agents, and whether they amount to searches or seizures."). If the contested action meets both of these requirements, the court then considers whether the search or seizure is "unreasonable" under the Fourth Amendment. *Id*.

In the present controversy, it is clear that both of the initial requirements have been satisfied. The drug test at issue is attributable to government or government-sanctioned action inasmuch as Relford is employed by county government. In addition, it is well settled that drug tests, which utilize blood-testing, breath-testing or urinalysis, constitute "searches" that come within the ambit of the Fourth Amendment. *Skinner*, 489 U.S. 602, 616-617 (citing *Schmerber v. California*, 384 U.S. 757, 767-768 (1966), (finding a Fourth Amendment search in the use of blood-testing procedures); *California v. Trombetta*, 467 U.S. 479, 481 (1984) (finding a Fourth Amendment search in the use of breathalysers)).

Having determined that the test is attributable to government and constitutes a search for Fourth Amendment purposes, the court must now examine the drug testing of Relford for reasonableness. The Fourth Amendment does not preclude all searches that are attributable to the government, only those that are unreasonable. *Skinner*, 489 U.S. at 619. (citations omitted). Whether the intrusion is reasonable "depends on all of the circumstances surrounding the search or seizure and the nature of the search or seizure itself." *United States v. Montoya de Hernandez*, 473 U.S. 531, 537 (1985).

As a general matter, to satisfy the reasonableness requirement, a search or seizure must be "accomplished pursuant to a judicial warrant issued upon probable cause." *Skinner*, 489 U.S. at 619. Stated differently, "a search ordinarily must be based on individualized suspicion of wrongdoing." *Chandler v. Miller*, 520 U.S. 305, 313 (1997) (citation omitted). The Supreme Court, however, has recognized "particularized exceptions to the main rule," *id*., when "special needs, beyond the normal need for law enforcement, make the warrant and probable-cause requirement impracticable," *Skinner*, 489 U.S. at 619. (internal quotations and citations omitted). In evaluating these "particularized exceptions," the constitutionality of a governmental policy or procedure "is judged by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests." *Id.*; *Delaware v. Prouse*, 440 U.S. 648, 654 (1979); *United States v. Martinez-Fuerte*, 428 U.S. 543 (1976). "In limited circumstances, where the privacy interests implicated by the search are minimal, and where an important governmental interest furthered by the intrusion would be placed in jeopardy by a requirement of individualized suspicion, a search may be reasonable despite the absence of such suspicion." *Chandler*,

520 U.S. at 314 (quoting *Skinner*, 489 U.S. at 624). Thus, not all suspicionless testing violates the Fourth Amendment.

Evaluating reasonable suspicion "involves a twofold inquiry: first, one must consider whether the action was justified at its inception; second, one must determine whether the search as actually conducted was reasonably related in scope to the circumstances which justified the interference in the first place." *New Jersey v. T.L.O.*, 469 U.S. 325, 341 (1985) (citations omitted). In justifying an intrusion, the government "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry v. Ohio*, 392 U.S. 1, 20-21 (1968). "[I]t is imperative that the facts be judged against an objective standard: would the facts available to the officer at the moment of the seizure or the search warrant a man of reasonable caution in the belief that the action taken was appropriate?" *Id.* at 21-22.

Relford argues, without contest, that all EAP participants undergo drug testing in random order. We must therefore determine whether the County had a reasonable suspicion that Relford was involved in illegal drug-related activities when it ordered him to take part in its substance abuse assistance program. In this case, Relford was arrested for criminal trespass and possession of drug paraphernalia. He then failed to report his arrest to his employer. When it became apparent that his incarceration would result in his absence from work, he elicited the help of a friend, with whom he concocted a false excuse in an unsuccessful effort to cover up his absence. Upon his supervisor learning of the arrest and the actual reason for his absence from work, he issued Relford a notice to submit to RCT. Relford refused.

In directing Relford to participate in the drug and alcohol abuse EAP, the Commission found that he had been arrested for possession of drug paraphernalia, falsely called in sick, abused sick leave, and falsified a report. The nature of Relford's employment misconduct, i.e., his dishonesty to his employer exemplified by his efforts to cover up the reasons for his work absence, when accompanied by his arrest for criminal trespass and possession of drug paraphernalia, reasonably suggests his use of the paraphernalia for the consumption of illegal narcotics. Whether a mere allegation of possession of drug paraphernalia, standing alone, would support reasonable suspicion sufficient to justify employee drug-testing is not before us. In the present controversy, however, the undisputed facts sufficiently establish reasonable suspicion that Relford was probably using controlled substances.[1] As such, the order of the Commission directing Relford to participate in the drug and alcohol abuse EAP does not constitute an unreasonable search for Fourth Amendment purposes.

Relford advances several additional arguments in support of his Fourth Amendment claim. He contends that the district court erred by failing to adhere to the determination of the Fayette Circuit Court, which found that the County had ordered the drug testing arbitrarily. A review of the record, however, reveals that the State court did not consider the reasonableness of the drug test on Fourth Amendment grounds. In this regard, the State court declined to rule upon the constitutional issue stating that "[w]hether or not the constitutional concerns are satisfied in this case is not really relevant because the respondent [County] has failed to follow its own drug testing policies." J.A. at 97. Although the County may have arbitrarily strayed from its internal policies, that conduct does not conclusively establish a Fourth Amendment violation. *See Guest v. Leis*, 255 F.3d 325, 334 (6th Cir. 2001) (citing *State v. Klemm*, 536 N.E.2d 14, 16 (Ohio Ct. App. 1987) for the proposition that a violation of state law does not make a search unreasonable in a constitutional sense).

Relford also contends the district court improperly concluded that he had not suffered a constitutional violation because he did not actually submit to the first test. Because Relford refused to submit to the notice of RCT, we agree with the district court that he did not suffer any cognizable injury

---

[1] Inasmuch as we conclude that the search of Relford was supported by reasonable suspicion, we need not address whether Relford was employed in a safety sensitive position nor whether some other justification necessary for suspicionless drug testing existed. *See Skinner*, 489 U.S. at 619; *Knox County Educ. Ass'n v. Knox County Bd. of Educ.*, 158 F.3d 361, 373 (6th Cir. 1998).

from that notice. Moreover, even if he had submitted to the RCT, our finding that the Commission's order that he participate in the drug and alcohol abuse EAP was supported by reasonable suspicion is rooted in circumstances that occurred prior to his employer's issuance of the RCT notice. Thus, the same facts constitute a reasonable suspicion that would have been equally applicable to the testing required by the RCT notice.

## II.

We now turn to Relford's complaint that the County violated his due process rights under the Fifth and Fourteenth Amendments of the United States Constitution. In evaluating a claim for a violation of due process rights, this court applies a two-step analysis. First, we determine whether the claimant has a property interest that entitles him to due process protection. *Leary v. Daeschner*, 228 F.3d 729, 741-42 (6th Cir. 2000) (citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538 (1985)). Under state law, government and civil service employees may have a property right in their continued employment. *See Loudermill*, 470 U.S. at 538. Second, if the claimant has such an interest, this Court must determine "what process is due." *Id.* at 541.

The County concedes that Relford possessed a property interest in his continued employment because Kentucky law provides for dismissal or suspension only upon certain showings. *See* K.R.S. § 67A.280 ("No employee in the classified service of urban-county government, . . . shall be dismissed, suspended, or reduced in grade or pay for any reason except inefficiency, misconduct, insubordination, or violation of law involving moral turpitude."). The district court, however, determined that Relford could not maintain his claim for a due process violation because he voluntarily resigned from his job with the County. In addition, the district court held that Relford received notice of the County's intent to seek his termination but declined to use the administrative appeals process, which would have entitled him to a hearing and an opportunity to be heard. Relford argues that he was constructively discharged.

On January 21, 1998, after he tested positive for the use of unlawful drugs, Relford resigned in a letter, stating, "I Robert Relford having found another job with better [and] less stressful working conditions do resign effective Wendsday [sic], Jan 21[,] 1998." J.A. at 93. Thus, the record supports the conclusion that Relford resigned because he found other employment. In addition, Relford received two notices that the County was seeking his termination; first, after he refused the RCT, and second, after he tested positive as an EAP participant. In the instance of the RCT, Relford received a hearing before the Commission during which he was given an opportunity to present evidence. With regard to the EAP testing, however, Relford resigned before a hearing date had been established. "An essential principle of due process is that a deprivation of life, liberty, or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.'" *Loudermill*, 470 U.S. at 542 (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950)). Here, Relford was provided both notice and an opportunity to be heard.

We similarly must reject Relford's claim that the RCT notice did not apprise him in a manner that was sufficient to protect his due process rights because it inaccurately accused him of having been arrested for "possession" of narcotics. Relford contends that, in the absence of the defective RCT notice, the Commission would not have directed his participation in the drug and alcohol abuse EAP. The County concedes the inaccuracy of the notice. This technical deficiency, however, did not so totally mislead Relford as to have resulted in a deprivation of his constitutional rights to due process of law. Surely Relford knew that he had recently been arrested and what charges had been lodged against him. Indeed, the evidence suggests that Relford was fully aware of the intent of the challenged notice. In particular, the Fayette Circuit Court noted in its opinion that "[a]t his attorney's suggestion, Relford requested that the reasonable cause notice be reissued to reflect the correct charges." J.A. at 94. Upon our consideration of all of these circumstances, we conclude that the RCT notice was sufficient to place Relford on notice and to protect his constitutional rights to due process of law.

III

We find that the County did not violate Relford's right to be free from an unreasonable search under the Fourth Amendment or his rights to due process of law under the Fifth and Fourteenth Amendments of the United States Constitution.  Accordingly, we **AFFIRM** the district court's order of summary judgment in favor of the Defendant.