RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 09a0177p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

AMY BADEN-WINTERWOOD, et al.,
    *Plaintiffs-Appellants/Cross-Appellees,*

          *v.*

Nos. 07-4437/4438

LIFE TIME FITNESS, INC.,
    *Defendant-Appellee/Cross-Appellant.*

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 06-00099—Gregory L. Frost, District Judge.

Argued: October 22, 2008

Decided and Filed: May 19, 2009

Before: BOGGS, Chief Judge; COLE and COOK, Circuit Judges.

_____

**COUNSEL**

**ARGUED:** Nicole T. Fiorelli, Patrick J. Perotti, DWORKEN & BERNSTEIN CO., L.P.A., Painesville, Ohio, for Appellants. Douglas R. Christensen, DORSEY & WHITNEY, LLP, Minneapolis, Minnesota, for Appellee. **ON BRIEF:** Nicole T. Fiorelli, Patrick J. Perotti, DWORKEN & BERNSTEIN CO., L.P.A., Painesville, Ohio, for Appellants. Douglas R. Christensen, Marilyn J. Clark, Zeb-Michael Curtin, Michael J. Wahoske, DORSEY & WHITNEY, LLP, Minneapolis, Minnesota, for Appellee.

_____

**OPINION**

_____

COLE, Circuit Judge.    Plaintiffs-Appellants/Cross-Appellees Amy Baden-Winterwood, et al., (collectively, "Plaintiffs") seek overtime compensation from Defendant-Appellee/Cross-Appellant Life Time Fitness, Inc. ("Defendant" or "Life Time Fitness") for alleged violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq. Specifically, Plaintiffs claim that because Life Time Fitness's compensation plan ("corporate

1

bonus-pay plan" or "compensation plan") was not consistent with the salary-basis test set forth in 29 C.F.R. § 541.602, Plaintiffs were not exempt from overtime compensation. Defendant counters that its compensation plan was at all times compliant with the FLSA, or, in the alternative, that, if Plaintiffs are entitled to overtime compensation, such compensation is limited to that earned during the time period in which Defendant made actual deductions from Plaintiffs' salaries.

On the parties' cross-motions for summary judgment, the district court bifurcated the time period at issue, finding that the Supreme Court's interpretation of the salary-basis test in *Auer v. Robbins*, 519 U.S. 452 (1997) ("*Auer* test" or "*Auer* subject-to-reduction test"), controlled for the time period before August 23, 2004, while 29 C.F.R. § 541.603 controlled for the time period between August 23, 2004 and March 3, 2006. Applying these tests, the district court concluded that certain Plaintiffs were entitled to overtime compensation but only for the three pay periods occurring in November and December, 2005, when actual deductions were taken from Plaintiffs' pay.

Plaintiffs appeal the district court's bifurcation determination as well as its finding that Plaintiffs were entitled to overtime compensation for only the three pay periods in which deductions were made.[1]    Life Time Fitness cross-appeals the district court's determination that its compensation plans violated the FLSA and that Plaintiffs are entitled to any compensation.

## I. BACKGROUND

### A.    Factual Background

Plaintiffs are current or former employees of Life Time Fitness, a Minneapolis corporation that owns and operates approximately sixty health and fitness centers throughout the United States. (Joint Appendix ("JA") 53-57.)

In district court, the parties submitted the following stipulated facts:

---

[1]Plaintiffs also claim that Plaintiff Tina Seals has a separate basis for overtime compensation because Seals's compensation did not meet the salary-level test. However, this issue was not adequately presented to the district court, and genuine issues of material fact remain as to Seals's compensation level. As such, our summary judgment review requires that this issue be remanded to the district court for further consideration.

1.    Life Time Fitness is an employer covered by the FLSA.

2.    Plaintiffs' claim is that Defendant's method of compensating Plaintiffs was not consistent with the salary[-]basis test, presently codified at 29 C.F.R. § 541.602, and, thus, Plaintiffs contend that Plaintiffs were not exempt from the overtime provisions of the FLSA during the pay period falling within the limitations period, and thus are entitled to overtime for hours worked over forty for each week during said limitations period, whatever said limitations period is determined to be. Defendant contends that its pay plan at all times complied with the FLSA and that Plaintiffs are not entitled to overtime for any pay period during their employment with Defendant. In the alternative, Defendant contends that to the extent any Plaintiffs are entitled to overtime, such liability period is limited to the period of time during which actual deductions occurred from Plaintiffs' salaries.

3.    The [FLSA's] salary[-]basis test is explained in 29 C.F.R. § 541.602(a), which provides, in part:

> An employee will be considered to be paid on a "salary basis" within the meaning of these regulations if the employee regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of the employee's compensation, which amount is not subject to reductions because of variations in the quality or quantity of the work performed.

4.    Specifically, Plaintiffs believe that language in certain corporate bonus[-]pay plans which covered them during their employment with Defendant, under which Defendant reserved the right to make deductions from their base salaries to recover for earlier bonus overpayments on a year-to-date basis, and the fact that such deductions were made from eight Plaintiffs as set forth [below], was inconsistent with the salary[-]basis test.

### Corporate Bonus[-]Pay Plans

5.      Each Plaintiff was compensated under a corporate bonus[-]pay plan for some period of time during which he or she was employed by Defendant during the time period potentially relevant to this lawsuit (February 8, 2003 through March 3, 2006).

6.      During the periods of time for which each Plaintiff was covered by a corporate bonus[-]pay plan, he or she generally was paid a pre-determined amount of compensation, identified by Life Time Fitness as base salary, on a semi-monthly basis.  In addition to base salary, each Plaintiff was eligible to receive monthly bonus payments based on year-to-date performance according to guidelines set forth in his or her corporate bonus[-]pay plan.

7.      The first date any Plaintiff was covered by a corporate bonus[-]pay plan which contained language reserving Defendant's right to make deductions from Plaintiffs' base salaries to recover for earlier bonus overpayments on a year-to-date basis was January 1, 2004.  The periods of time each Plaintiff was covered by such corporate bonus[-]pay plans (referred to as "corporate bonus[-]pay plans at issue in [these stipulations]") are set forth below in paragraphs 21 through 46.

### 2004 Corporate Bonus[-]Pay Plans

8.      Defendant's 2004 corporate bonus[-]pay plans, effective January 1, 2004, covered Plaintiffs employed during 2004 as senior management, [specifically] Member Activities Department Heads.  Around April 1, 2004, the plans were further extended to Life Café Department Heads.   The following Plaintiffs were covered by corporate bonus[-]pay plans for some or all of 2004 . . . : Baden-Winterwood, Barge, Brevard, Chaney, Davenport, Galloway, Gregorich, House, Konieczny, Mendez, Nutinsky, and Schroeder.

9.      Plaintiffs' 2004 corporate bonus[-]pay plans contained the following language: "If, during the year, YTD EBITDA Before Occupany $ performance drops below the minimum performance level of 80% of plan, and payments have been made in previous months, then [Life Time Fitness] reserves the right to reclaim the

amount of previous payments by reducing future semi-monthly guarantee payments."

10.     No Plaintiff had his or her base salary reduced in 2004 to recover earlier bonus overpayments.

### *2005 Corporate Bonus[-]Pay Plans*

11.     Defendant's 2005 corporate bonus[-]pay plans, effective January 1, 2005, covered Plaintiffs employed during 2005 as senior management, [specifically] Member Activities Department Heads, Life Café Department Heads, and Life Spa Department Heads. The following Plaintiffs were covered by corporate bonus[-]pay plans for some or all of 2005 . . . : Baden-Winterwood, Barclay, Barge, Brevard, Chaney, Erdman, Fuss, Galloway, Gregorich, House, Johnson, Lloyd, Mann, McCarthy, Mendez, Nutinsky, Richards, Seals, Visser, Volbrecht, Weiler, West, and Young.

12.     Plaintiffs' 2005 corporate bonus[-]pay plans contained the following language: "If, during the year, performance drops to a level such that bonus payments made exceed the amount earned, Life Time Fitness reserves the right to reclaim the amount of the overpayment by reducing future semi-monthly base salary payments."

13.     Across three pay dates in November and December 2005—namely, November 9, November 23, and December 9—a total of 8 Plaintiffs had their base salaries reduced to recover some of the amounts of unearned bonus overpayments they had received earlier in the year.

14.     Plaintiffs whose base salaries were reduced for the November 9, 2005 pay date were Baden-Winterwood, Barclay, Gregorich, House, and Young.

15.     Plaintiffs whose base salaries were reduced for the November 23, 2005 pay date were Baden-Winterwood, Erdman, Gregorich, House, and Young.

16.     Plaintiffs whose base salaries were reduced for the December 9, 2005 pay date were Baden-Winterwood, Barclay, Erdman, Galloway, Gregorich, House, Mendez, and Young.

*2006 Corporate Bonus[-]Pay Plans*

17.  Defendant's 2006 corporate bonus[-]pay plans, effective January 1, 2006, applied to the same universe of relevant positions as the 2005 corporate plans. Accordingly, the Plaintiffs employed as Member Activities Department Heads, Life Café Department Heads, and Life Spa Department Heads during some or all of 2006 generally were covered by the 2006 corporate bonus[-]pay plans. These individuals were Baden-Winterwood, Barclay, Erdman, Fuss, Galloway, Gregorich, Lloyd, Mann, McCarthy, Mendez, Visser, Weiler, West, and Young.

18.  Effective January 1, 2006, Defendant altered its corporate bonus[-]pay plans to implement a 20% hold back "bank," which Defendant designed to protect the corporation from bonus overpayments on a year-to-date basis. Defendant revised Plaintiffs' 2004 and 2005 corporate bonus[-]pay plans to provide that "[o]n a YTD basis if the amount of At Risk Pay or Performance Pay earned is less than the amount paid, Life Time Fitness Inc. reserves the right to reclaim the amount of overpayment by reducing the 20% monthly hold-back and if necessary future semi-monthly base salary payments. On an annual basis, in no case will the Guarantee Pay be lowered."

19.  Following the filing of the instant lawsuit [in district court], in recognition of the fact that at least one of its employees believed its corporate bonus[-]pay plans may have violated the FLSA, and as an employee relations measure, Defendant decided to further alter its 2006 corporate bonus[-]pay plans so that any attempts to recover earlier bonus overpayments would be taken only from the 20% hold back bank. On or around March 3, 2006, Defendant issued revised copies of its 2006 corporate bonus[-]pay plans, which Defendant backdated to be effective January 1, 2006, and which contained the following language: "On a YTD basis if the amount of At-Risk Pay or Performance Pay earned is less than the amount paid, Life Time Fitness Inc. reserves the right to reclaim the amount of overpayment from the banked Performance Pay hold-back. In no case will the Guaranteed Pay be reduced."

20. None of the Plaintiffs had his or her base salary reduced at any point during 2006 to recover earlier bonus overpayments.

***Facts Relevant to Individual Plaintiffs' Claims***

21. Amy Baden-Winterwood has been employed by Life Time Fitness as a Member Activities Department Head from July 1, 1999 through the present. She was covered by a corporate bonus[-]pay plan at issue in this lawsuit from January 1, 2004 through March 3, 2006.

. . .

23. Victor Barge was employed by Life Time Fitness as a Director-Project Management Organization from July 6, 2004 through September 1, 2005. He was covered by a corporate bonus[-]pay plan at issue in this lawsuit from July 6, 2004 through September 1, 2005.

24. Kristina Brevard was employed by Life Time Fitness as a Member Activities Department Head from April 30, 2004 through August 31, 2005. She was covered by a corporate bonus[-]pay plan at issue in this lawsuit from April 30, 2004 through August 31, 2005.

25. Teresa Chaney was employed by Life Time Fitness from approximately August 1, 1999 through August 2, 2005. She was employed as a Member Activities Department Head during the period from February 8, 2003 through August 2, 2005. She was covered by a corporate bonus[-]pay plan at issue in this lawsuit from January 1, 2004 through August 2, 2005.

26. Elizabeth (Campbell) Davenport was employed by Life Time Fitness as a Member Activities Department Head from October 15, 2002 through February 14, 2004. She was covered by a corporate bonus[-]pay plan at issue in this lawsuit from January 1, 2004 through February 14, 2004.

. . .

32. Chrisondra Johnson was employed by Life Time Fitness from September 15, 2004 through October 15, 2005. She was employed as a Life Spa Department Head from February 1, 2005 through October 15, 2005; however, she went on unpaid leave on August 8, 2005,

and performed no work thereafter. She was covered by a corporate bonus[-]pay plan at issue in this lawsuit from February 1, 2005 through October 15, 2005.

33. Scott Konieczny was employed by Life Time Fitness as a Life Café Department Head from October 24, 2002 through October 1, 2004. He was covered by a corporate bonus[-]pay plan at issue in this lawsuit April 1, 2004 through October 1, 2004.

. . .

38. Robert Nutinsky was employed by Life Time Fitness from approximately December 2, 2003 to June 15, 2006. He was employed as a Member Activities Department Head from March 1, 2004 through April 30, 2005. He was covered by a corporate bonus[-]pay plan at issue in this lawsuit from March 1, 2004 through April 30, 2005.

. . .

40. Andrea Schroeder was employed by Life Time Fitness as a Member Activities Department Head from March 29, 2004 through September 2, 2004. She was covered by a corporate bonus[-]pay plan at issue in this lawsuit from March 29, 2004 through September 2, 2004.

41. Tina Seals was employed by Life Time Fitness at various times from approximately January 12, 1999 through October 24, 2005. She was employed as a Member Activities Department Head from August 1, 2005 through October 24, 2005. She was covered by a corporate pay plan at issue in this lawsuit from August 1, 2005 through October 24, 2005.

. . .

43. Aaron Volbrecht was employed by Life Time Fitness from approximately November 16, 2000 until August 1, 2005. He was employed as a salaried Sales Manager from March 1, 2005 through August 1, 2005. He was covered by a corporate bonus[-]pay plan at issue in this lawsuit from March 1, 2005 through August 1, 2005.

(Stipulation of Certain Undisputed Facts ("Stip.") 3-10, JA 49-56.)

**B.    Procedural Background**

Plaintiff Amy Baden-Winterwood initiated this litigation on February 8, 2006 in the United States District Court for the Southern District of Ohio on behalf of herself and as a putative class representative, asserting claims for unpaid wages, overtime, and injunctive relief under the FLSA. The parties stipulated to certification of a conditional class, which, before the district court, consisted of twenty-six individuals.

Plaintiffs and Life Time Fitness filed cross-motions for summary judgment. Plaintiffs argued that Life Time Fitness misclassified them as salaried exempt employees and failed to pay them overtime as required by the FLSA. Specifically, Plaintiffs alleged that Life Time Fitness's payment plans violated the salary-basis test, 29 C.F.R. § 541.602(a), because Plaintiffs' pay was subject to reduction "because of variations in the quality or quantity" of their work. Plaintiffs requested liquidated damages under 29 U.S.C. § 216(b) as well as attorney fees and costs.

Life Time Fitness argued that any salary deductions were made to recover overpayments of bonus pay. Life Time Fitness claims that these deductions were unrelated to the quality or quantity of Plaintiffs' work, and therefore did not violate the FLSA. Life Time Fitness further argued that, to the extent that any salary reduction violated the FLSA, Plaintiffs could recover overtime pay for only those pay periods during which actual deductions were made.

On July 10, 2007, the district court granted in part Plaintiffs' motion for summary judgment, finding "that the deductions from the salaries of eight Plaintiffs were deductions resulting from 'variations in the quality or quantity of the work performed,' in violation of the salary-basis test." *Baden-Winterwood v. Life Time Fitness*, No. 2:06-CV-99, 2007 U.S. Dist. LEXIS 49777, at *42 (S.D. Ohio July 10, 2007) (quoting 29 C.F.R. § 541.602(a)). However, the district court limited Plaintiffs' recovery to overtime pay for the three pay periods in 2005—the periods ending November 9, November 23, and December 9—during which Life Time Fitness took actual deductions from Plaintiffs' salaries. *Id*. The court dismissed all other claims

for overtime pay, including, in their entirety, the claims of the ten Plaintiffs here. *Id*. at *42-43.

In its review of Plaintiffs' overtime claims, the district court undertook a thorough three-part analysis. First, the district court determined the effect of the Department of Labor's ("DOL") new salary-basis regulations. *Id*. at *21-24. The court found that "[u]nder the new regulations, [effective August 23, 2004,] only '[a]n *actual practice* of making improper deductions demonstrates that the employer did not intend to pay employees on a salary basis.'" *Id*. at *22 (quoting 29 C.F.R. § 541.603(a)). This meant that Plaintiffs' claims covering the period of time before August 23, 2004 would be analyzed under the *Auer* test, while claims related to the period after August 23, 2004, would be governed by the DOL's new regulation. *Id*. at *24-43.

Second, the district court found that Life Time Fitness did not violate the salary-basis test during the period prior to August 23, 2004. *Id*. at *31. The court found that "there is no evidence that [Life Time Fitness]—between January 1, 2004, and August 23, 2004—had developed any kind of plan that would indicate more of an intent to actually make improper salary deductions, or that it actually docked the pay of any salaried employees pursuant to the program's terms . . . ." *Id*.

Third, the district court turned to Plaintiffs' post-August 23, 2004 claims and determined that improper deductions from Plaintiffs' salaries occurred on three distinct dates during November and December 2005. *Id*. at *41-42. The court reasoned that these deductions violated the salary-basis test because they specifically related to the quality or quantity of work each Plaintiff had performed. *Id*. Applying the new DOL regulations, the court concluded that those parties whose salaries had been reduced during those pay periods, as well as employees in the same job classification as those with such salary deductions, were entitled to overtime pay. *Id*. at *42. As stated above, the court also dismissed all claims for overtime for "parties to this action who were not department heads working for [Life Time Fitness] during those pay periods . . . ." *Id*. at *43.

On October 9, 2007, the district court entered final judgment under Rule 54(b) against the ten Plaintiffs whose claims were dismissed in their entirety in the court's July 10, 2007 opinion and order. *Baden-Winterwood v. Life Time Fitness*, No. 2:06-CV-99, 2007 U.S. Dist. LEXIS 77618, at *1 (S.D. Ohio Oct. 9, 2007). Those ten Plaintiffs filed a timely notice of appeal and Life Time Fitness filed a timely notice of cross-appeal.

## II.  LAW AND ANALYSIS

### A.    Standard of review

The parties contend that the district court erred in its resolution of their cross-motions for summary judgment. In reviewing a grant of summary judgment on cross-motions for summary judgment, this Court applies the same legal standards as the district court. *Relford v. Lexington-Fayette Urban County Gov't*, 390 F.3d 452, 456 (6th Cir. 2004). A party's request for summary judgment should be granted "only where the pleadings and evidence 'show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Id*. at 456-57 (quoting Fed. R. Civ. P. 56(c)). In reviewing the district court's decision on each party's motion, we must view all facts and inferences in the light most favorable to the nonmoving party. *Relford*, 390 F.3d at 456 (citing *Lenning v. Commercial Union Ins. Co.*, 260 F.3d 574, 581 (6th Cir. 2001)). Our review is de novo as to questions of law. *See Benefits Comm. of Saint-Gobain Corp. v. Key Trust Co. of Ohio, N.A.*, 313 F.3d 919, 925 (6th Cir. 2002).

### B.    The regulatory framework

Congress enacted the FLSA in 1938 as a remedial statute "designed to correct 'labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers . . . .'" *Dunlop v. Carriage Carpet Co.*, 548 F.2d 139, 143 (6th Cir. 1977) (quoting 29 U.S.C. § 202(a)). The FLSA provides that employers may not require employees to work more than forty hours per workweek unless those employees receive overtime compensation at a rate

of not less than one-and-one-half times their regular pay. 29 U.S.C. § 207(a)(1). The FLSA contains certain exemptions from the overtime compensation requirement, 29 U.S.C. § 213; however, "[e]xemptions under the FLSA are narrowly construed against the employer." *Takacs v. Hahn Auto. Corp.*, 246 F.3d 776, 779 (6th Cir. 2001). The applicability of an FLSA exemption is an affirmative defense that an employer must establish by a preponderance of the evidence. *Renfro v. Indiana Michigan Power Co.*, 497 F.3d 573, 576 (6th Cir. 2007) (citing *Walling v. Gen. Indus. Co.*, 330 U.S. 545, 547-48 (1947)).

Life Time Fitness claims that employees in Plaintiffs' positions are exempt from the FLSA's overtime provisions under the "bona fide executive, administrative, or professional capacity" exemption. 29 U.S.C. § 213(a)(1). Under the FLSA regulations, an employee's position must satisfy three tests to qualify for this exemption: (1) a duties test; (2) a salary-level test; and (3) a salary-basis test*. Acs v. Detroit Edison Co.*, 444 F.3d 763, 767 (6th Cir. 2006) (citing *Takacs*, 246 F.3d at 779); *see also* 29 C.F.R. § 541.700 (duties test); 29 C.F.R. § 541.600 (salary-level test); 29 C.F.R. § 541.602 (salary-basis test).

The issue before this Court is whether Plaintiffs' compensation plans satisfy the salary-basis test. Prior to August 23, 2004, the salary-basis test, as defined by regulation, provided:

> An employee will be considered to be paid "on a salary basis" within the meaning of the regulations if under his employment agreement he regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of his compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed.

29 C.F.R. § 541.118(a) (1973). In August 2004, the DOL updated the regulations defining the salary-basis test. The new regulation states:

> An employee will be considered to be paid on a "salary basis" within the meaning of these regulations if the employee regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of the employee's compensation, which

> amount is not subject to reduction because of variations in the quality or quantity of the work performed.

29 C.F.R. § 541.602(a) (effective August 23, 2004).  Under both versions, Life Time Fitness bears the burden of proving that Plaintiffs were paid:  (1) a predetermined amount, which (2) was not subject to reduction (3) based on quality or quantity of work performed.  Notably, however, rather than include the term "employment agreement," the updated regulations focus on pay received.  *Compare* 29 C.F.R. §§ 541.118(a), 541.602(a).

For our purposes, the salary-basis test has two interpretations of the phrase "subject to," both of which are relevant here.  In 1997, in *Auer v. Robbins*, 519 U.S. 452 (1997), the Supreme Court adopted the interpretation offered by the Secretary of Labor that the salary-basis test denies exempt status "if there is either an actual practice of making . . . deductions [based on variations in quality or quantity of work performed] or an employment policy that creates a 'significant likelihood' of such deductions." *Id*. at 461.  Specifically, the Court held:

> The Secretary's approach rejects a wooden requirement of actual deductions, but in their absence it requires a clear and particularized policy--one which "effectively communicates" that deductions will be made in specified circumstances.  This avoids the imposition of massive and unanticipated overtime liability . . . in situations in which a vague or broadly worded policy is nominally applicable to a whole range of personnel but is not "significantly likely" to be invoked against salaried employees.

*Id*. Thus, under *Auer*,  an employee is not paid on a salary basis if (1) there is an actual practice of salary deductions or if (2) an employee is compensated under a policy that clearly communicates a significant likelihood of deductions.  *Id*.

Following *Auer*, on March 31, 2003, the DOL provided published notice on a proposed set of new FLSA regulations.  *See* Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employees, 68 Fed. Reg. 15,560 (Mar. 31, 2003).  After a 90-day comment period, the DOL revised and released its final regulations, defining the exemptions under the FLSA.

*See* Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employees, 69 Fed. Reg. 22,122 (Apr. 23, 2004). The new regulations became effective on August 23, 2004. *Id.*

Under the new regulations, the Secretary of Labor reinterpreted the salary-basis test. Life Time Fitness argues that the DOL specifically eliminated the "policy" part of the *Auer* test, whereby a "significant likelihood" of improper deductions was sufficient to cause an employee to lose his or her FLSA exemption. The new regulations ("§ 541.603") provide that "[a]n actual practice of making improper deductions demonstrates that the employer did not intend to pay employees on a salary basis." 29 C.F.R. § 541.603(a). Moreover, Life Time Fitness argues that the new regulations limit the scope of recovery by providing that "[i]f the facts demonstrate that the employer has an actual practice of making improper deductions, the exemption is lost during the time period in which the improper deductions were made for the employees in the same job classification working for the same managers responsible for the actual improper deductions." 29 C.F.R. § 541.603(b).

In its comments, the DOL explains that while the new rule represents a departure from the Secretary's position in *Auer*, "[t]he 'significant likelihood' test is not found in the FLSA itself or anywhere in the existing Part 541 regulations. Moreover, nothing in *Auer* prohibits the [DOL] from making changes to the salary[-]basis regulations after appropriate notice and comment rulemaking." Defining and Delimiting the Exemptions, 69 Fed. Reg. at 22,180. The DOL stated its reasoning behind the changes:

> Any other approach, on the one hand, would provide a windfall to employees who have not even arguably been harmed by a "policy" that a manager has never applied and may never intend to apply, but on the other hand, would fail to recognize that some employees may reasonably believe that they would be subject to the same types of

impermissible deductions made from the pay of similarly situated employees.

*Id.*

## C.    Bifurcation

Plaintiffs assert that the *Auer* Court's interpretation of the salary-basis test should apply to the entire claim period.  They argue that this Court should look to the date the claims arose, which they argue is January 1, 2004, to determine the applicable salary-basis test.  (Final Br. of Plaintiffs ("Pls.' Br.") 43 (citing *LaCourse v. GRS III L.L.C.*, No. 05-73613, 2006 U.S. Dist. LEXIS 89935, at *42 (E.D. Mich. Dec. 13, 2006) ("The Court believes that cases decided after the amendment date must apply the prior regulations if the claim arose before the new regulations took effect.") (citations omitted))).  Plaintiffs claim that the district court erred in applying *Auer* only from January 1, 2004 through August 29, 2004 because "*Auer*'s 'policy or practice' test is looked at over the entire claim period."  (Pls.' Br. at 44.)

Life Time Fitness counters that the district court did not err in applying the *Auer* test before August 23, 2004 and in applying § 541.603 after August 23, 2004. Life Time Fitness asserts that "[t]here is no question the new regulations apply to all of Plaintiffs' claims for work performed *after* August 23, 2004," and, in fact, points to cases that have gone farther—applying the new regulations to all work performed, including work occurring before August 23, 2004.  (Final Br. of Defendant ("Df.'s Br.") 28-29 (citing *Bowman v. Builder's Cabinet Supply Co.*, No. 04-201-DLB, 2006 U.S. Dist. LEXIS 62712, at *10 (E.D. Ky. Aug. 23, 2006) (applying new regulations to pre-section-603 employment where plaintiffs filed suit after the new regulations took effect); *Johnson v. Target Corp.*, No. 3:05-CV-153, 2006 U.S. Dist. LEXIS 15876, at *12 n.1 (E.D. Tenn. Mar. 8, 2006) (same); *Casto v. Royal Oak Indus., Inc.*, No. 5:04-CV-195, 2006 U.S. Dist. LEXIS 8282, at *11 n.6 (W.D. Mich. Feb. 10, 2006) (same)).)

The district court did not definitively decide that *Auer* applied to the pre-August 23, 2004 time period.  Instead, the court determined that it "need not decide

which interpretation of the salary-basis test to use" because, as to the pre-August 23, 2004 period, "[u]nder either interpretation . . . [Life Time Fitness] did not violate the test." *Baden-Winterwood*, 2007 U.S. Dist. LEXIS 49777, at *25.

Today, we decide that the proper approach is to apply *Auer*'s salary-basis test to pay periods occurring before August 23, 2004 and to apply § 541.603 to pay periods occurring after the same, § 541.603's effective date. Plaintiffs correctly point out that DOL regulations do not apply retroactively. *See Kennedy v. Commonwealth Edison Co.*, 410 F.3d 365, 369 (7th Cir. 2005) (concluding that the Secretary's new FLSA interpretations do not apply retroactively). In *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1998), the Supreme Court recognized that "a statutory grant of legislative rulemaking authority will not, as a general matter, be understood to encompass the power to promulgate retroactive rules unless that power is conveyed by Congress in express terms." No such terms apply here, and therefore the proper pre-August 23, 2004 standard is *Auer*'s salary-basis test.

As to the post-August 23, 2004 period, the DOL's new regulations apply. The district court correctly held that "the Secretary of Labor's interpretation of the [salary-basis] test controls unless it is 'plainly erroneous or inconsistent with the regulation.'" *Baden-Winterwood*, 2007 U.S. Dist. LEXIS 49777, at *32 (quoting *Auer*, 519 U.S. at 461). Simply put, the DOL's 1997 interpretation of the salary-basis test is not understood to control indefinitely. As stated by the district court, the Supreme Court "clearly considered the possibility that the Secretary of Labor's interpretation could change over time and decided that courts should give great deference to the interpretation regardless of any changes." *Id*. at *32-33. After the proper notice and comment period, § 541.603, which became effective on August 23, 2004, represents the DOL's current interpretation and implementation of the salary-basis test. As such, § 541.603 controls and is applicable to pay periods occurring after August 23, 2004.

**D.     The pre-August 23, 2004 period**

Plaintiffs assert that the district court erred by applying *Auer*'s subject-to-reduction test to the pre-August 23, 2004 claim period.  They argue that the district court improperly concluded that because Life Time Fitness made no deductions from January 1, 2004 through August 23, 2004, there was neither an actual practice nor a policy creating a significant likelihood of deductions. (Pls.' Br. at 48-57.)  Plaintiffs claim that the district court erred in two distinct ways: "First it was error to bifurcate the entire time period by the date of the regulation . . . .  Second, the District Court improperly considered the fact that no actual deductions were made . . . —not to determine there was no actual practice, but that there was not a policy [creating a significant likelihood of deductions]."  *Id.* at 45-46.     As previously discussed, Plaintiffs are incorrect that the DOL's new regulation does not bifurcate the class period.  However, Plaintiffs are correct that the district court erred in determining that Plaintiffs' salaries were not subject to deduction under *Auer*.

As explained above, the proper test for analyzing the pre-August 23, 2004 period is set out in *Auer*.  The *Auer* test asks "if there is either an actual practice of making such deductions *or* an employment policy that creates a 'significant likelihood' of such deductions."  519 U.S.  at 461 (emphasis added).  We examine both sections of the *Auer* test below.

*1.     Actual practice of deductions*

Plaintiffs argue that Life Time Fitness's compensation plan had an actual practice of deductions during the pre-August 23, 2004 period.  Plaintiffs contend that, in analyzing the pre-August 23, 2004 period, that the district court should have looked at the number of deductions and the number of employees affected over the entire time period. *See Takacs*, 246 F.3d at 781 (concluding that an actual practice of deductions existed where seven members of management (including three plaintiffs) faced pay reductions over the course of a year and a half) (other citations omitted)).  But this argument simply rehashes an old one.  The analysis period for actual deductions is determined by the promulgation of the DOL's new rules, and it is undisputed that Life

Time Fitness made no actual deductions between January 1, 2004 and August 23, 2004. Thus, the district court properly found there was no "actual practice" of deductions under *Auer* before August 23, 2004.

### 2.    *Significant likelihood of deductions*

Plaintiffs also argue that Life Time Fitness's 2004 corporate bonus-pay plan created a significant likelihood of deductions. They argue that the district court improperly failed to find that the bonus-pay plan created a significant likelihood of improper deductions. In this instance, Plaintiffs are correct.

The district court looked to *Whisman v. Ford Motor Co.*, 157 F. App'x 792 (6th Cir. 2005), for support of the proposition that the possibility of salary deductions alone is not enough as it "is not the same thing as working under a policy that makes it significantly likely that deductions will occur." *Baden-Winterwood*, 2007 U.S. Dist. LEXIS 49777, at *30. In *Whisman*, a company executive issued a memorandum warning of possible pay deductions based on audit reports that were being generated as employees entered and exited the building. 157 F. App'x at 795. Despite the threat of deduction, there was no evidence that the company routinely monitored the employees or that such deductions were ever made, *id*., and this Court concluded that there was no more than a "theoretical possibility" that deductions would occur. *Id*. at 798. Relying on *Whisman*, the district court determined that Life Time Fitness's policy reserved the right to make salary deductions as a theoretical possibility but did not rise to the level of providing clear notice that Plaintiffs' pay was subject to deduction. *Baden-Winterwood*, 2007 U.S. Dist. LEXIS 49777, at *31. Thus, the district court determined that Life Time Fitness's policy did not establish a significant likelihood that deductions would occur. *Id*.

The district court erred in concluding that there was not enough evidence to suggest Life Time Fitness intended to enforce its permissive policy. The *Auer* subject-to-reduction test requires only a "clear and particularized policy—one which 'effectively communicates' that deductions will be made in specified circumstances." 519 U.S. at 461. The test does not require a formulaic set of "magic words" indicating

that the test is mandatory. If employers can avoid overtime liability by crafting payment policies with permissive (*may*) language instead of mandatory (*will*) language, then the purposes of the FLSA would clearly be frustrated. Rather, as set out by this Court in *Takacs* and *Whisman*, *Auer*'s test is better satisfied by a policy that demonstrates that deductions are "more than a mere theoretical possibility" and that "permit[s] disciplinary or other deductions in pay 'as a practical matter.'" 246 F.3d at 781.

Here, Life Time Fitness's pre-August 23, 2004 compensation plan subjected employees' pay to reductions under the *Auer* test. The compensation plan at issue does more than create a theoretical possibility of deduction; instead it plainly lays out a policy under which Life Time Fitness would make future deductions. First, as in *Takacs*, Life Time Fitness's compensation plan targeted specific members of management. Second, the policy set out a particularized formula whereby Plaintiffs' pay would be in jeopardy:

> If, during the year, YTD EBITDA Before Occupany $ performance drops below the minimum performance level of 80% of plan, and payments have been made in previous months, the [Life Time Fitness] reserves the right to reclaim the amount of previous payments by reducing future semi-monthly guarantee payments.

(Stip. 5, JA 50.) Third, unlike in *Whisman*, Life Time Fitness took affirmative steps to demonstrate that the pay-deduction plan would be enforced: Life Time Fitness organized a Performance Pay Committee, which oversaw the administration of the corporate bonus plans, monitored performance levels, and ultimately determined when deductions would be made. Moreover, at least one company official testified that Life Fitness employees were keenly aware that Life Time Fitness would take deductions from their guaranteed pay if an employees' performance dropped below certain benchmarks. Life Time Fitness's Compensation and Human Resource Information Systems manager provided the following testimony:

> Q.    . . . Prior to 2005 fall, these employees had no idea that they were subject to this deduction, did they?

A.     I don't know that.  I would disagree with that.

Q.     Why would you disagree with that?

A.     Well, it's on the comp plan.

Q.     Their performance -- or their compensation plan?

A.     Well, it says right there on the front page.

Q.     And you're holding which exhibit?

A.     6.

Q.     And did they receive those plans?

A.     Oh, yeah.

Q.     Well, those – wouldn't you agree that those plans are very ambiguous, that I could read it and say, Well, I'm not going to be subject to that; that's not too clear?

A.     I would disagree with that.

Q.     Would you say that it's very clear that under that plan, that if there was an overpayment, it wasn't an income; it was definite that you're subject to this deduction?

A.     Yes.

(Deposition of Derrick Boaz 49-50, JA 198-99.)  Thus, it was clear to the Plaintiffs, and those in charge of compensation, that pay was subject to deduction under the compensation plans at issue here.

Lastly, Life Time Fitness did indeed take actual deductions from Plaintiffs' salaries not long after employees stopped meeting their performance goals.  While these deductions fell outside the time period governed by *Auer* (January 1, 2004 through August 23, 2004), there is no reason that this Court cannot consider those later deductions to be relevant in analyzing whether the compensation plan creates a "significant likelihood" of deductions.  We find the actual deductions from Plaintiffs guaranteed pay in 2005 support the conclusion that Plaintiffs pay was "subject to reduction" under Life Time Fitness's 2004 corporate bonus-pay plan.

For the above reasons, this Court reverses the district court and concludes that Life Time Fitness's compensation plan satisfies *Auer*'s subject-to-reduction test for the period January 1, 2004 through August 23, 2004. Therefore, for this time period, Plaintiffs were not exempt from the FLSA's overtime requirements, and Life Time Fitness is liable for overtime for all Plaintiffs subject to a corporate bonus-pay plan from January 1, 2004 through August 23, 2004.

**E.     The post-August 23, 2004 period**

Here, Plaintiffs argue, again, that the district court erred in finding that § 541.603 and its "actual deduction" requirement supplanted the *Auer* test. Having dealt with this issue previously, and because the DOL has ample authority to issue new regulations after the requisite notice-and-comment period, we conclude that Plaintiffs' argument fails.

On the other hand, Life Time Fitness, on cross-appeal, argues that the district court erred in finding that the deductions from Plaintiffs' salaries made in late 2005 were impermissible. Life Time Fitness contends that the district court: (1) failed to follow proper legal standards in analyzing whether deductions made under the plan were because of variations in the quality or quantity of work, and (2) failed to give weight to material facts showing that deductions were not made because of quality or quantity of work.

*1.     Legal issues related to § 541.603*

Life Time Fitness concedes that it took deductions from guaranteed pay in November and December of 2005, but it argues that it did so in order to recoup overpayment, not because of the quality or quantity of Plaintiffs' work. Life Time Fitness claims that it is "well established that an employer is permitted to reduce wages or salary to recoup for earlier overpayments," and it cites to DOL opinion letters allowing the recovery of overpayment. One letter, in relevant part, provides:

> Q.1. What percentage of the employee's paycheck may [the employer] deduct to recoup the money owed it?

> A.1. It has been our longstanding position that where an employer makes a loan or an advance of wages to an employee, the principal may be deducted from the employee's earnings even if such deduction cuts into the minimum wage or overtime pay due the employee under the FLSA. Thus, the percentage that [the employer] may deduct to recoup the money owed to it would be at its own discretion or per agreement with employee.

Department of Labor, Wage and Hour Division Opinion Letter of Mar. 20, 1998, 1998 WL 852662; *see also* Department of Labor, Wage and Hour Division Opinion Letter of Oct. 8, 2004, 2004 WL 3177896 (same). Thus, Life Time Fitness argues that there was nothing improper about paycheck deductions that simply recovered the overpaid bonus amount.

We disagree. Life Time Fitness did not provide loans to its employees. To be sure, it did make advance bonus payments. However, to recover overpayments, Life Time Fitness impermissibly dipped into Plaintiffs' guaranteed salaries. Unlike the situation in both DOL letters, Life Time Fitness knowingly made salary deductions as part of a pre-designed bonus compensation plan. *See Baden-Winterwood*, 2007 U.S. Dist. LEXIS 49777, at *38-39. The deductions were not made to recover irregular salary advances or payments mistakenly made by the payroll department. *See id.* The plain language of 29 C.F.R. § 541.602 provides, "[s]ubject to the exceptions provided in [section 541.602(b)], an exempt employee must receive the full salary for any week in which the employee performs any work . . . ." 29 C.F.R. § 541.602(a). Section 541.602(b) provides, generally, that deductions may be made for absentee-ism, sick leave (in certain circumstances), penalties imposed in good faith for infractions of safety rules, unpaid disciplinary suspensions, and, under the DOL letters described above, for mistaken overpayments. But, there is no support for the contention that the FLSA allows for the reduction of guaranteed pay under a purposeful, incentive-driven bonus compensation plan. We conclude therefore that the district court properly determined that Life Time Fitness took improper deductions under § 541.603. The district court correctly explained that "the DOL materials cited by [Life Time Fitness], while supportive of the recovery of advances and overpayments in certain situations,

do not sanction the recovery of overpayments in this case." *Baden-Winterwood*, 2007 U.S. Dist. LEXIS 49777, at *38.

### 2.    *Evidentiary issues related to § 541.603*

In the alternative, Life Time Fitness argues that the district court ignored material facts showing that the compensation plans at issue in this lawsuit were computed based on departmental performance rather than on any variance in the quality or quantity of an individual's work. Life Time Fitness alleges that the evidence in the record "demonstrates that monthly-paid bonus advances were dependent upon a number of factors and were not tethered solely or directly to the hours any covered employee worked or the quality of her work." (Final Second Br. of Life Time Fitness at 57.) By way of example, Life Time Fitness contends that a Department-Head-level employee's bonus was affected by her supervisees' performance, the size and location of a particular club, club-usage volume, and other factors.

We find Life Time Fitness's argument that its corporate bonus compensation plans are not based on individual performance to be dubious, at best. As stated by the district court, "it is strange for Defendant to argue that individual performance was mainly irrelevant to the computation of bonus payments. [Life Time Fitness] offered, after all, that it created the bonus plans '[a]s a means for providing incentives for certain of its employees . . . .'" *Baden-Winterwood*, 2007 U.S. Dist. LEXIS 49777, at *39. In fact, Plaintiffs set forth an extensive record—including stipulated facts and testimony—to show that Life Time Fitness's corporate bonus compensation plans were tied to individual performance and varied based on the quality and quantity of each individual's work. *Id*. at *39-42.

### F.    The effect of post-August 23, 2004 deductions

Plaintiffs argue that the district court erred in limiting recovery to the three pay periods in 2005, rather than granting overtime to all Plaintiffs for the entire post-August 23, 2004 claim period. Here, again, Plaintiffs' claims are flawed. To the extent that we are considering only the post-August 23, 2004 salary-basis test, when

actual deductions were made, § 541.603(b) and its implementing regulations explain that "the exemption is lost *during the time period* in which the improper deductions were made for employees in the same job classification working for the same managers responsible for the actual improper deductions." 29 C.F.R. § 541.603(b) (emphasis added). Therefore, the district court properly determined that only Plaintiffs who worked in the appropriate job classification during the relevant deduction period were entitled to overtime compensation under § 541.603 after August, 23, 2004.

### III. CONCLUSION

For the preceding reasons, the Court **AFFIRMS** the district court's decision bifurcating the class period, finding that violations of 29 C.F.R. § 541.602 occurred in November and December of 2005, and limiting § 541.603 overtime compensation to those three pay periods. However, the Court **REVERSES** the district court insofar as it found that the pre-August 23, 2004 compensation plan did not create a substantial likelihood of deductions. The Court, therefore, concludes that Life Time Fitness is liable for overtime compensation to those Plaintiffs employed and subject to the corporate bonus-pay plan from January 1, 2004 to August 23, 2004. Finally, the Court **REMANDS** the issue of whether Plaintiff Tina Seals's compensation met the salary-level test to the district court for further consideration consistent with this opinion.