755 N.W.2d 570 (2008)
In re Dr. Roy Wayne BUCKMASTER, D.P.M., and Albert Lea Medical CenterMayo Health System, Petitioners.
Sandra O'Rourke (f/k/a Sandra Ruble), et al., Respondents,
v.
Dr. Roy Wayne Buckmaster, D.P.M., et al., Petitioners.
No. A07-1682.
Court of Appeals of Minnesota.
September 9, 2008.
*573 David T. Schultz, David F. Herr, Jason A. Lien, Maslon Edelman Borman & Brand, Minneapolis, MN, and Joshua B. Murphy, Mayo Clinic Legal Department, Rochester, MN, for petitioners.
Peter A. Schmit, Craig O. Sieverding, Robins, Kaplan, Miller & Ciresi, Minneapolis, MN, for respondents.
Rebecca Egge Moos, Charles E. Lundberg, Dong Wook Kim, Minneapolis, MN, for Dr. Stephen Powless.
William M. Hart, Meagher & Geer, Minneapolis, MN, for Amici Curiae The Minnesota Medical Association, et al.
Considered and decided by MINGE, Presiding Judge; TOUSSAINT, Chief Judge; and HUSPENI, Judge.

OPINION
HUSPENI, Judge.[*]
Petitioners seek a writ of prohibition reversing several pretrial evidentiary rulings by the district court. A special-term panel of this court denied the writ in part, and petitioners now argue that the district court erred by (1) deciding that an agreement for corrective action between petitioner doctor and the Minnesota Board of Podiatric Medicine was not a settlement agreement barred under Minn. R. Evid. 408, (2) permitting use of the agreement for corrective action for impeachment purposes, and (3) failing to balance the probative value of the evidence against its potential for unfair prejudice. We grant the petition for prohibition.

FACTS
Petitioners Dr. Roy Buckmaster and Albert Lea Medical CenterMayo Health System (ALMC) are defendants in a pending medical-malpractice action. Dr. Buckmaster is a podiatrist licensed by the Minnesota Board of Podiatric Medicine (BPM). He practices medicine at ALMC. The medical-malpractice action arises out of a bone-fusion surgery and related procedures that Dr. Buckmaster performed on respondent Sandra O'Rourke's foot in July 2001 and January 2002.[1]
In fall 2003, O'Rourke filed a complaint with the BPM, alleging that the procedures Dr. Buckmaster performed were unnecessary and resulted in complications, including foot pain, stiffness, and limping. The BPM's complaint-resolution committee (the committee) investigated the complaint. In early November 2004, the committee served Dr. Buckmaster with a notice of conference in which it detailed allegations to which he would have an opportunity to respond. Although the record does not reflect what occurred at the November 19, 2004 conference, Dr. Buckmaster and the committee apparently agreed to resolve the matter *574 by entering into an agreement for corrective action (ACA).
In the months following the conference, counsel for Dr. Buckmaster and the committee exchanged correspondence directed toward drafting an ACA. In late January 2005, assistant attorney general Susan Damon, acting as counsel for the committee, relayed the committee's proposed ACA to Dr. Buckmaster's attorney, David Bunde. Damon requested that Dr. Buckmaster sign the ACA if he "agree[d] to resolution of the pending matter on the terms set forth." Bunde responded to Damon's letter and advised her that Dr. Buckmaster agreed to "the essential terms of the proposal, but would like to slightly revise the [ACA]." He proposed two changes. In response, Damon advised Bunde that the committee had considered Dr. Buckmaster's proposals and declined to adopt them as written. She provided an amended version of the ACA, however, containing "compromise language" which adopted some of Dr. Buckmaster's proposed additions. She again requested that Dr. Buckmaster sign and return the document if he agreed to the changes. Dr. Buckmaster signed the revised ACA on March 23, 2005. And in accordance with statutory requirements, the committee sent O'Rourke a copy of the ACA.[2]
In June 2005, O'Rourke initiated a medical-malpractice action against petitioners, attaching a copy of the ACA to the complaint. Petitioners filed a motion in limine requesting that the district court exclude evidence of the BPM proceedings, particularly the ACA. Petitioners argued that the ACA was a settlement agreement and, therefore, the ACA and all communications relating to the ACA must be excluded pursuant to Minn. R. Evid. 408. They further argued that even if rule 408 does not bar admission of such evidence, the evidence should be excluded under Minn. R. Evid. 403 because its probative value is substantially outweighed by the danger of unfair prejudice. In an order dated March 12, 2007, the district court denied petitioners' motion in part, agreeing with O'Rourke that the evidence was admissible under an exception to the hearsay rule and concluding that the portion of the ACA addressing background information was not barred by rule 408. The district court granted petitioners' motion, however, with respect to the portion of the ACA specifically addressing corrective action. It also ordered that either party could use the corrective-action portion of the ACA for impeachment purposes but required the parties to obtain an order specifically authorizing such use before doing so.
Petitioners subsequently subpoenaed Dr. Stephen Powless, a podiatrist licensed by the BPM who served as a member of the committee addressing O'Rourke's BPM complaint against Dr. Buckmaster. Petitioners sought to obtain information from Dr. Powless regarding the scope of the committee's investigation and negotiation process that led to the ACA in order to demonstrate the limited nature of the ACA and thereby undermine the value of the ACA as evidence of liability.
Dr. Powless requested a protective order, and the district court granted petitioners leave to argue a motion for reconsideration of its March 12, 2007 order at the same time the court considered Dr. Powless's motion. In support of their motion, petitioners submitted evidence of the correspondence between Damon and Bunde in early 2005. In an order dated August 13, 2007, the district court granted Dr. Powless a protective order and *575 quashed the subpoena without explanation. In the same order, it also denied petitioners' motion for reconsideration, reasoning that although the evidence established that Dr. Buckmaster and the committee had "discussed" the ACA, rule 408 did not require exclusion of the ACA because there was no evidence of dispute, negotiation, or consideration.
On September 4, 2007, petitioners filed a petition for a writ of prohibition from this court, requesting review of both the March 12, 2007 and the August 14, 2007 pretrial orders. O'Rourke opposed the petition. Dr. Powless also submitted a response, supporting the petition with respect to the district court's denial of petitioners' motion in limine, but opposing the petition with respect to the protective order. In an order dated October 2, 2007, a special-term panel of this court denied the petition with respect to the protective order. But because of the lack of Minnesota caselaw on the issue, this court ordered the parties and Dr. Powless to submit briefs and present oral argument on the admissibility of the ACA between Dr. Buckmaster and the BPM. The district court's orders were also stayed pending further order from this court.

ISSUES
1. Is a writ of prohibition an appropriate remedy in this case?
2. Did the district court err by concluding that Minn. R. Evid. 408 does not require exclusion of the ACA?
3. If the ACA is inadmissible pursuant to Minn. R. Evid. 408, did the district court err by permitting its use for impeachment purposes?
4. Did the district court err by not addressing petitioners' argument that the ACA should be excluded pursuant to Minn. R. Evid. 403?

ANALYSIS

I.
Petitioners request a writ of prohibition that prohibits any reference at trial to the proceedings before the BPM, any substantive admission of the ACA at trial, and any use of the ACA for impeachment purposes. A writ of prohibition is an extraordinary remedy. In re Comm'r of Pub. Safety, 735 N.W.2d 706, 710 (Minn. 2007). Before we will issue a writ of prohibition, a petitioner must satisfy three requirements: (1) an "inferior court or tribunal" must be about to exercise judicial or quasi-judicial power; (2) the exercise of such power must be unauthorized by law; and (3) the exercise of such power must result in injury for which there is no adequate legal remedy. State v. Deal, 740 N.W.2d 755, 769 (Minn.2007) (quotation omitted). There are numerous valid reasons for issuing a writ, including correction of an error of law in the district court where no other adequate remedy is available to the petitioner and enforcement of the district court's order would do irreparable harm. Id. (citing State v. Turner, 550 N.W.2d 622, 626 (Minn.1996)).
Although evidentiary rulings generally are left to the district court's discretion, Kroning v. State Farm Auto. Ins. Co., 567 N.W.2d 42, 45-46 (Minn.1997), rule 408 is a rule of exclusion, and the district court has no discretion to admit evidence that falls within the ambit of the rule. C.J. Duffey Paper Co. v. Reger, 588 N.W.2d 519, 524 (Minn.App.1999), review denied (Minn. Apr. 28, 1999). Therefore, admission of evidence that falls within the ambit of the rule constitutes an error of law.
There are no Minnesota cases specifically addressing the appropriateness of a writ of prohibition as a remedy for an *576 erroneous pretrial ruling regarding rule 408. O'Rourke argues that a posttrial appeal is the only appropriate remedy for flawed evidentiary rulings. The Minnesota Supreme Court, however, has suggested that appellate review of "an interlocutory ruling on admissibility of evidence . . . would probably have to be by an extraordinary writ." Minnegasco, Inc. v. County of Carver, 447 N.W.2d 878, 880 n. 4 (Minn. 1989); see also Turner, 550 N.W.2d at 626 (concluding that petition for writ of prohibition was proper means for challenging district court's interlocutory order quashing subpoenas). And as caselaw from other jurisdictions has recognized, admission of evidence like the ACA would "clearly be prejudicial." See Francis v. Reynolds, 215 Ga.App. 418, 450 S.E.2d 876, 877 (1994) (expressing concern that jury in malpractice trial would give dentistry board's findings regarding dentist's conduct at least as much weight as expert-witness testimony but dentist would have no opportunity for cross-examination). Moreover, this court's special-term order recognized that "a ruling on whether an [ACA] between a health-related licensing board and a regulated person . . . is admissible in a civil trial will have statewide impact." Therefore, we conclude that the petition for a writ of prohibition is a proper means by which to challenge the district court's interlocutory evidentiary rulings regarding an agreement for corrective action between a health-related licensing board and a regulated person.

II.
We first address petitioners' argument that the ACA between Dr. Buckmaster and the BPM is inadmissible under Minn. R. Evid. 408. Although petitioners argue that the specific facts of this case establish that the ACA between Dr. Buckmaster and the BPM is an inadmissible settlement agreement, they also suggest more broadly that an ACA between a health-related licensing board and a person subject to the board's regulations is by its very nature a settlement within the meaning of Minn. R. Evid. 408 and, therefore, inadmissible as evidence of liability. Dr. Powless and the amici curiae[3] likewise suggest that all such ACAs should be inadmissible to prove liability.
As petitioners correctly note, Minn.Stat. § 214.103 (2006)[4] governs resolution of complaints by health-related licensing boards and authorizes health-related licensing boards to enter into ACAs with regulated persons. Therefore, petitioners' broad argument that any ACA pursuant to section 214.103 must be excluded under rule 408 requires us to interpret the statute and the rule. We review the interpretation of statutes and court rules de novo. Johnson ex rel. Johnson v. Johnson, 726 N.W.2d 516, 518 (Minn.App. 2007). When a statute's language is clear, we must apply its plain meaning. Minn. Stat. § 645.16 (2006). We also accept the plain meaning of the language of rules. Rubey v. Vannett, 714 N.W.2d 417, 421 (Minn.2006).
Rule 408 is a rule of exclusion and the district court has no discretion to admit evidence that violates the rule. Reger, 588 N.W.2d at 524. The rule provides:

*577 Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible.
Evidence violates the rule when it (1) constitutes a compromise or an offer to compromise a claim that is disputed as to either validity or amount, (2) is offered to prove liability, and (3) is not offered for another legitimate purpose. Minn. R. Evid. 408; Reger, 588 N.W.2d at 524. Since the parties do not appear to dispute that the ACA was largely being offered to prove liability, and whether it was offered for another legitimate purpose is a separate issue addressed below in section III, the following analysis assumes that the latter two factors are met and addresses the sole issue of whether an ACA under Minn.Stat. § 214.103 constitutes a compromise of a disputed claim.
When a health-related licensing board, such as the BPM, receives a complaint that "alleges or implies a violation of a statute or rule which the board is empowered to enforce," section 214.103 authorizes the executive director or designated member of the board to "attempt to resolve the complaint with the regulated person." Minn. Stat. §§ 214.01, subd. 2, 214.103, subds. 2, 6(a) (2006). To that end, the executive director or designated member of the board may confer with the regulated person "for the purposes of investigation, negotiation, education, or conciliation." Minn.Stat. § 214.103, subd. 6(a). "The results of attempts at resolution with the regulated person may include a recommendation to the board for disciplinary action, an agreement between the executive director or the designated board member and the regulated person for corrective action [an ACA], or the dismissal of a complaint." Id. Any ACA pursuant to section 214.103 must be in writing, must be reviewed by a designated representative of the attorney general's office, and must "provide for dismissal of the complaint upon successful completion by the regulated person of the corrective action." Id., subd. 6(a)(2). But if resolution is not in the public interest or "attempts at resolution. . . are not satisfactory to the executive director or the designated board member," a contested case hearing may be initiated. Id., subd. 6(a).
The district court concluded that the ACA was not a settlement agreement, emphasizing that it found no evidence of dispute, negotiation, or valuable consideration. We agree with the district court that evidence of all three of these elements is necessary to demonstrate that there was a compromise of a disputed claim, the first prong of the Reger test. However, we disagree with the district court's conclusion, and address each element in turn.
First, several facets of section 214.103 indicate that a dispute arises between a regulated person and a health-related licensing board when a citizen files a complaint with the board. The plain language of the statute permits the executive director or designated board member to decline to "resolve" the complaint when resolution is against the public interest or "not satisfactory." Minn.Stat. § 214.103, subd. 6(a). This language indicates that a health-related licensing board not only is obligated to act in the best interests of the public, but also has an independent interest in the complaint-resolution process that would serve as a basis for judging the satisfactoriness of possible resolutions. And since a complaint submitted to a *578 health-related licensing board falls within the board's "jurisdiction" only if it implicates a statute or rule which the board is empowered to enforce, id., subds. 2, 3, the board's independent interest in the complaint-resolution process is founded in the board's enforcement power. See id., subds. 2 (requiring health-related licensing boards to "receive and resolve complaints"), 6(a)(2) (requiring designated representative from attorney general's office to "represent the board . . . in all attempts at resolution which . . . may result in corrective action" (emphasis added)). Thus, we conclude that the receipt of a complaint implicating a statute or rule which the board is empowered to enforce gives rise to a dispute between the board and the regulated person within the meaning of rule 408.
Second, section 214.103 plainly contemplates negotiation. The district court concluded that it would be "an anathema against public policy, to entertain the supposition that the [BPM] may `negotiate' with the doctors when drawing up its final assessment about the quality of care the patients received." But, contrary to the analysis of the district court, the statute explicitly authorizes the executive director or designated member of the board to negotiate with the regulated person to resolve the complaint by some means less than a full contested case hearing. Minn. Stat. § 214.103, subd. 6(a). Further, although the district court suggested that it would be inappropriate for the BPM to negotiate with regulated persons because the BPM is a state agency, there is no impropriety in such negotiation. Unquestionably, the state itself may negotiate with a criminal defendant, and when such negotiation occurs, those negotiations are inadmissible as evidence in subsequent proceedings. Minn. R. Evid. 410; see also State v. Jackson, 325 N.W.2d 819, 822 (Minn.1982) (recognizing the relevance of rule 408 policy considerations in criminal proceedings). Similarly, neither the public nature of a health-related licensing board nor the public availability of an ACA[5] diminishes the statutory authorization for negotiation.
Third, valuable consideration is apparent in the exchange inherent to every ACA. Consideration may be found when one party voluntarily assumes an obligation on condition that the other party act or forbear to act. Chalmers v. Kanawyer, 544 N.W.2d 795, 798 (Minn.App.1996). When a health-related licensing board resolves a complaint by entering into an ACA pursuant to section 214.103, it requires corrective action of the regulated person in exchange for dismissal of the complaint. Minn.Stat. § 214.103, subd. 6(a)(2). Clearly, the regulated person assumes the obligation to complete the agreed-upon corrective action, and the board agrees not to pursue the complaint further. Both parties also give up the right to fully test the allegations in the complaint at a hearing. Since neither the regulated person nor the board is legally obligated to perform or forbear in this manner prior to entering into an ACA, each party's performance or forbearance constitutes valuable consideration.
The policy considerations noted by the petitioners and underscored by Dr. Powless and the amici curiae also inform *579 our analysis. Excluding evidence of settlement negotiations promotes settlement by relieving parties of the fear that statements made in furtherance of settlement could later be used against them. Hentschel v. Smith, 278 Minn. 86, 98, 153 N.W.2d 199, 208 (Minn.1967). Courts have an interest in encouraging settlement, because settlement lessens the burden on judicial resources. See, e.g., Karon v. Karon, 435 N.W.2d 501, 504 (Minn.1989) ("In the interest of judicial economy, parties should be encouraged to compromise their differences and not to litigate them."). Also, as the amici curiae and BPM-member Dr. Powless urge, state agencies have substantial legitimate interests in conserving resources and, therefore, have a powerful impetus to settle matters under their review. That interest is furthered by application of rule 408 to exclude evidence of settlement agreements between state agencies, such as health-related licensing boards and those individuals subject to the agencies' regulation. Failure to foster and support settlement agreements such as the ACA at issue here would have the unfortunate consequence of requiring a Hobson's choice: either bring every complaint to a full contested hearing or dismiss all but the most egregious claims. Neither of those bleak alternatives could be argued to protect the interests of the public whose welfare is served by licensed professionals and the boards that oversee the performance of those professionals.
Indeed, Minnesota appellate courts have implicitly recognized as much by applying rule 408 to exclude evidence of settlement negotiations between state agencies and other regulated persons. See In re Max Schwartzman & Sons, Inc., 670 N.W.2d 746, 753 (Minn.App.2003) (stating that letter from the Minnesota Pollution Control Agency to alleged violators expressing willingness to consider a longer period for correction of violation was inadmissible under rule 408); cf. In re Disciplinary Action against Wood, 716 N.W.2d 341, 346-47 (Minn.2006) (upholding decision of professional-responsibility-hearing referee that rule 408 barred admission of statements made by director of professional responsibility office in settlement negotiations with lawyer subject to discipline). But see McKay's Family Dodge v. Hardrives, Inc., 480 N.W.2d 141, 148 (Minn. App.1992) (holding that admission of a portion of a stipulation agreement with the Minnesota Pollution Control Agency did not violate rule 408 because the portion admitted "merely indicate[d] that a notice of violation was issued to appellant" and contained no admission that a violation occurred), review denied (Minn. Mar. 26, 1992). And appellate courts in other jurisdictions have recognized this broader relevance of the rule's underlying policy interests by excluding evidence of settlements with state agencies. See, e.g., Malan v. Huesemann, 942 S.W.2d 424, 428-29 (Mo. Ct.App.1997) (requiring exclusion of evidence of settlement between pharmacist and state pharmacy board because "[t]he desire to encourage settlements is fully applicable to settlement of administrative actions"); cf. McClure v. Walgreen Co., 613 N.W.2d 225, 236 (Iowa 2000) (concluding that evidence of stipulation between pharmacy and state pharmacy board was inadmissible irrelevant evidence).
Because the statutory framework set forth in section 214.103 establishes the existence of the three key elements of a settlement and the policy considerations underlying rule 408 support exclusion of settlements with state agencies, we conclude that ACAs pursuant to section 214.103 are settlement agreements inadmissible under rule 408 as evidence of liability.
Finally we note that even if the negotiation and resolution process set forth in *580 section 214.103 did not categorically require exclusion of all ACAs, the facts of this case confirm that the particular ACA at issue in this case was clearly a settlement agreement within the meaning of rule 408. Most fundamentally, this ACA is a voluntary agreement between Dr. Buckmaster and the committee that requires certain action from him in exchange for certain action by the committee. Indeed, the ACA itself states that the parties enter into the agreement "pursuant to the authority of Minnesota Statutes section 214.103, subdivision 6(a)(2)."
Furthermore, this ACA was the result of negotiation between Dr. Buckmaster and the committee, as demonstrated by their exchange of proposals regarding the terms of the settlement. Although O'Rourke emphasizes that this exchange of proposals did not result in significant changes to the ACA, this does not mean that the final ACA was not the result of negotiation. Rather, the parties' correspondence demonstrates a mutual understanding that execution of the ACA was contingent on both parties' agreement. Had Dr. Buckmaster proposed a change to the corrective-action portion of the ACA or a more significant change to the background-information portion, the committee was free to reject his proposals. And had Dr. Buckmaster opposed the committee's counter-proposal, he could have rejected it and accepted the risk that the committee would then recommend initiation of a contested case hearing, as it is authorized to do by Minn.Stat. § 214.103, subd. 6(a). Therefore, the facts of this case demonstrate that the ACA between Dr. Buckmaster and the committee was the type of settlement agreement excluded by rule 408 from admission as evidence of liability.

III.
Petitioners also argue that evidence of the ACA is not only inadmissible as substantive evidence of liability but also may not be used for impeachment purposes.[6] Generally, evidentiary rulings are left to the district court's sound discretion. Kroning, 567 N.W.2d at 45-46. We will not disturb the district court's evidentiary rulings absent an abuse of discretion or an error of law. Id.
Determining when settlement evidence, inadmissible to show liability, may be received to impeach is a difficult and troubling process. Rule 408 permits use of settlement evidence "when offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution." Minn. R. Evid. 408; accord Reger, 588 N.W.2d at 524 (requiring exclusion of evidence under rule 408 only when evidence is offered to prove liability and "not offered for another legitimate purpose"). The Minnesota Supreme Court has recognized that the rule permits admission of settlement evidence under limited circumstances. See, e.g., Peterson v. Little-Giant Glencoe Portable Elevator Div. of Dynamics Corp. of Am., 366 N.W.2d 111, 115 (Minn.1985) (stating that rule 408 permits admission of a settlement agreement "where it is offered for a purpose such as proving bias or prejudice of a witness" (quotation omitted)). The supreme court also has cautioned, however, that settlement evidence is "inherently prejudicial notwithstanding an instruction . . . limiting its purpose and effect." Esser v. Brophey, 212 Minn. 194, 200, 3 N.W.2d 3, 6 (1942).
*581 Indeed, even in those cases where the jury may need to know about a settlement, such as when the parties come to a mid-trial settlement agreement, the jury should be given only "facts necessary to arrive at a fair verdict to all parties." Frey v. Snelgrove, 269 N.W.2d 918, 923 (Minn.1978). And a party may not circumvent rule 408 by admitting a settlement agreement as impeachment evidence when there is no legitimate need for such evidence. See Esser, 212 Minn. at 200, 3 N.W.2d at 6 (concluding that settlement agreement "was not admissible to impeach the witness because it was not relevant to show either an admission of liability or the witness's hostility"); cf. State v. Hodges, 384 N.W.2d 175, 184 (Minn.App.1986) (stating that a party "may not misuse [the impeachment rule] to introduce hearsay which is otherwise inadmissible in the guise of impeachment"), aff'd as modified, 386 N.W.2d 709 (Minn.1986).
O'Rourke argues that rule 408 authorizes use of the ACA for impeachment. She first suggests that the ACA could be used to counter potential testimony by Dr. Buckmaster that his documentation for the procedures at issue was adequate. But our review of the ACA convinces us that it could not serve as a basis for impeachment because it contains no admission by Dr. Buckmaster that his documentation was inadequate. Indeed, O'Rourke acknowledges that the ACA contains "no express admission of liability." Use of the ACA for impeachment purposes would require viewing Dr. Buckmaster's decision not to contest the BPM's allegations as an admission, thereby undermining rule 408. See Esser, 212 Minn. at 199, 3 N.W.2d at 5 (concluding that settlement was irrelevant because "[w]here, as here, there was no admission, but a compromise and settlement of a disputed claim, an inference of admission of liability is not permissible"). Moreover, the record reflects that Dr. Buckmaster gave a deposition in preparation for the medical-malpractice action and testified regarding his documentation. The deposition satisfies O'Rourke's asserted need for a check on Dr. Buckmaster's potential testimony regarding the adequacy of his documentation. We can discern no circumstances under which rule 408 will be implicated in the cross-examination that O'Rourke will be entitled to pursue using Dr. Buckmaster's deposition. The availability of that deposition will assure for O'Rourke the full scope of effective cross-examination that is the guarantee of every plaintiff in an action such as this. The unavailability of use of the ACA will not prejudice O'Rourke's right to fully pursue her claims in this professional-malpractice litigation.
Similarly, although O'Rourke emphasizes that Dr. Buckmaster's credibility will be at issue if he testifies, the ACA has no bearing on his credibility. Specifically, the outcome of the litigation will have no effect on the ACA. Rather, the record reflects that the BPM complaint against Dr. Buckmaster was to be dismissed in September 2006 after he completed the corrective action required of him. Because the ACA provides Dr. Buckmaster no additional incentive to provide false testimony, it has no bearing on his credibility and ought not to serve as a basis for impeaching his credibility. Overall, our careful review of the record reveals no possible legitimate use of the ACA for impeachment purposes. Accordingly, the ACA may not be used at trial for impeachment purposes.[7]

*582 IV.
Petitioners next argue that the district court erred by not evaluating whether evidence of the ACA should be excluded pursuant to Minn. R. Evid. 403 as more prejudicial than probative. Because we conclude that rule 408 requires exclusion of the ACA, we need not address petitioners' argument regarding rule 403. We note, however, that rule 403 requires the district court to "balance the probative worth of the evidence against its potential for harm," Shea v. Esensten, 622 N.W.2d 130, 136 (Minn.App.2001), even when evidence is otherwise admissible. See State v. Bauer, 598 N.W.2d 352, 367 (Minn. 1999) (stating that "[e]ven if not violative of the hearsay rule, . . . evidence is subject to exclusion if its relevance is substantially outweighed by the danger of unfair prejudice"); see also Minn. R. Evid. 403 (permitting exclusion of evidence otherwise admissible as "relevant" evidence). Scrupulous adherence to this mandate may have obviated the need for the petition for a writ of prohibition which this court hereby issues.

DECISION
Because an agreement for corrective action pursuant to Minn.Stat. § 214.103 (2006) is a settlement agreement within the meaning of Minn. R. Evid. 408, it is inadmissible as evidence of liability in a subsequent civil action. Moreover, the facts of this case demonstrate that the agreement for corrective action between petitioner doctor and the Minnesota Board of Podiatric Medicine is a settlement agreement that is inadmissible under rule 408. Although rule 408 permits use of a settlement agreement to impeach a witness's credibility, such use is improper when, as here, the agreement does not bear on credibility and other means of impeachment are available.
Writ of prohibition granted.
NOTES
[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.
[1] Although O'Rourke's husband initially was a co-plaintiff in the medical-malpractice action, the parties subsequently stipulated to an amendment of the complaint to remove any reference to O'Rourke's husband. Consequently, O'Rourke is the only plaintiff in the underlying action.
[2] See Minn.Stat. § 214.103, subd. 9 (2006) (requiring health-related licensing boards to provide complainants with a description of their action regarding the complaint).
[3] The Minnesota Medical Association, the Minnesota Podiatric Medical Association, the American Medical Association, and the American Podiatric Medical Association collectively submitted a brief as amici curiae.
[4] Although the legislature amended section 214.103 in 2007, 2007 Minn. Laws ch. 123, §§ 129-130, at 925, we note that the amendments only affected subdivisions 8 and 9, which are not a substantive part of our analysis. Moreover, the amendments do not take effect until August 1, 2009. Id.
[5] The ACA indicates that it is public data, and Minn.Stat. § 13.41, subd. 5 (2006), categorizes as public data an agreement between a licensing agency, such as the BPM, and its licensee "to resolve a complaint without a hearing." Although the public status of a document may bear on a hearsay analysis, e.g., Minn. R. Evid. 803(8), it is largely irrelevant to the admissibility of evidence under rule 408. Cf. Reger, 588 N.W.2d at 524 (setting forth relevant considerations in determining admissibility of evidence under rule 408).
[6] O'Rourke argues that petitioners waived their impeachment argument by failing to present it to the district court. But the record reflects that petitioners specifically argued in their motion for reconsideration that "the ACA cannot be admitted under the guise of impeachment evidence." Thus, O'Rourke's assertion is contradicted by the record.
[7] We are not insensitive to the fact that trial has not yet occurred in this matter, and that circumstances may arise at trial that are unforeseen and unanticipated at this pretrial stage. Therefore, it is not without considerable thoughtand even reluctancethat we unequivocally prohibit impeachment use of the ACA at trial. Nonetheless, we are confident that given the particular facts of this case such prohibition is warranted. Such may not be the circumstance in future cases in which a rule 408 issue may arise.