**Sarah ERDMAN, individually and on behalf of others similarly situated, Respondent,**

v.

**LIFE TIME FITNESS, INC., Appellant.**

No. A08–1993.

Court of Appeals of Minnesota.

Aug. 25, 2009.

Nicole T. Fiorelli (pro hac vice), Dworken & Bernstein Co., L.P.A., Painesville, OH, and Steven E. Ness, Business Law Center, PLC, Bloomington, MN, for respondent.

Douglas R. Christensen, Michael J. Wahoske, Zeb–Michael Curtin, Dorsey & Whitney LLP, Minneapolis, MN, for appellant.

Considered and decided by HALBROOKS, Presiding Judge; TOUSSAINT, Chief Judge; and WILLIS, Judge.

## OPINION

WILLIS, Judge.*

This appeal is taken from an order denying a motion by appellant Life Time Fitness, Inc. (Life Time) for summary judgment dismissing a certified class claim asserted by respondent Sarah Erdman under the Minnesota Fair Labor Standards Act (MFLSA). The district court concluded that a bonus plan allowing payroll deductions for bonus amounts advanced but not earned precluded Life Time from claiming exemptions from the MFLSA as a matter of law. Because we conclude that the district court erred in interpret-

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to

Minn. Const. art. VI, § 10.

ing the MFLSA, we reverse and remand for entry of judgment in favor of Life Time.

## FACTS

Erdman and the class members were employed by Life Time in positions that Life Time treated as exempt from the requirements of the MFLSA. They earned base salaries and were eligible for annual bonuses based on the financial performance of various segments of the company. Although bonuses were not calculated finally until the end of the year, they received regular bonus advances based on year-to-date results. Life Time's written bonus plan provided that deductions could be made from base-salary payments to recover amounts advanced based on year-to-date results but not ultimately earned based on the year-end results. Life Time made deductions in accordance with this language in the bonus plan during four pay periods in November and December 2005. Although Erdman and other class members suffered deductions to the regular pay received in those particular workweeks, by year end they had received their full base salary plus the bonus actually earned for that year.

In March 2007, Erdman commenced this action against Life Time, asserting violations of the MFLSA.[1] The district court certified a class, and the parties brought cross-motions for summary judgment. The district court denied Life Time's motion for summary judgment, and granted Erdman's motion as to liability, reasoning that the bonus plans precluded Life Time from claiming exemptions from the MFLSA for the entire time period that they were in effect. The district court

reserved for trial the issues of damages (calculation of overtime), attorney fees, costs, and willfulness. On Life Time's motion, the district court certified the summary-judgment order as presenting questions that are important and doubtful, and Life Time appeals.

## ISSUE

Did the district court err by denying Life Time's motion for summary judgment?

## ANALYSIS

■ An order denying a motion for summary judgment is appealable if the district court certifies that the questions presented are "important and doubtful." Minn. R. Civ.App. P. 103.03(i). This court independently reviews whether the questions are important and doubtful. *Siewert v. No. States Power Co.*, 757 N.W.2d 909, 914 (Minn.App.2008). We recently addressed the standard to be applied:

> To be doubtful, a question need not be one of first impression, but it should be one on which there is a substantial ground for a difference of opinion. A question is important if it has statewide impact, will likely be reversed, is dispositive of potentially lengthy proceedings, and will impose substantial harm if wrongly decided by the district court. Among these factors, significant weight attaches to whether reversal would terminate potentially lengthy proceedings.

*Id.* at 914–15 (internal quotations and citations omitted).

Because the district court did not identify in its order the questions certified, we issued an order construing the district

---

1. Erdman is also a plaintiff in a parallel federal-court action asserted under the federal Fair Labor Standards Act. *See Baden–Winterwood v. Life Time Fitness, Inc.*, No. 2:06–cv–99,

2007 WL 2029066 (S.D.Ohio July 10, 2007), *aff'd in part and rev'd in part and remanded in part*, 566 F.3d 618 (6th Cir.2009).

court's order to adopt three lengthy questions articulated in Life Time's proposed order. Erdman has asked us to reconsider that construction, and she proposes alternative, equally lengthy, wording. We need neither iterate the competing formulations of the questions posed nor choose between them. The parties essentially agree that the issues for this court's consideration are: (1) does the Minnesota Payment of Wages Act, Minn.Stat. §§ 181.01 to .171 (2008) (PWA), specifically Minn.Stat. § 181.79, apply to Life Time's conduct in this case; (2) if so, are the class members limited to a remedy under section 181.79, or do they also have a remedy under the MFLSA, Minn.Stat. §§ 177.21 to .35 (2008); and (3) if recovery is available under the MFLSA, what is the scope of that remedy.

We agree that the issues raised here are important and doubtful for a number of reasons. First, a reversal of the district court's decision would end this litigation. Second, wage-and-hour claims are becoming more common in both state and federal courts. Third, the Minnesota Supreme Court has addressed the MFLSA in just one case, *Milner v. Farmers Ins. Exch.*, 748 N.W.2d 608 (Minn.2008). There, the supreme court issued two rather limited holdings that are not relevant here. *Milner*, 748 N.W.2d at 615, 618. Neither the supreme court nor this court has addressed the impact of deductions from pay on an employer's ability to claim exemption from the act. Fourth, the *Milner* court declined to rely on federal precedent construing the Fair Labor Standards Act, 29 U.S.C. §§ 201–19 (2006) (FLSA), thereby creating a particular need for caselaw construing the MFLSA. *See id.* at 614. And finally, while the *Milner* decision recognizes a relationship between the MFLSA and the PWA, *id.* at 617, the effect of that relationship on the issues raised in this case is unclear.

This court considers two questions on appeal from summary judgment: (1) whether there are any genuine issues of material fact and (2) whether the lower court erred in the application of law. *State by Cooper v. French*, 460 N.W.2d 2, 4 (Minn.1990). If there are no genuine issues of material fact and the appeal turns on purely legal issues, our review is de novo. *Progressive Specialty Ins. Co. v. Widness ex rel. Widness*, 635 N.W.2d 516, 518 (Minn.2001). The interpretation of a statute is an issue of law, subject to de novo review. *Milner*, 748 N.W.2d at 613.

When interpreting statutes, our goal is to give effect to the legislature's intent. *Id.* When the language of a statute is clear, we apply its plain meaning. *In re Buckmaster*, 755 N.W.2d 570, 576 (Minn. App.2008) (citing Minn.Stat. § 645.16 (2006)). Agency rules also should be construed according to their plain meaning. *See, e.g., St. Otto's Home v. Minnesota Dep't of Human Servs.*, 437 N.W.2d 35, 40 (Minn.1989) (explaining that no deference is owed to agency interpretation of unambiguous regulation).

■ "While statutory construction focuses on the language of the provision at issue, it is sometimes necessary to analyze that provision in the context of surrounding sections." *Am. Family Ins. Group v. Schroedl*, 616 N.W.2d 273, 278 (Minn. 2000); *see also Baker v. Ploetz*, 616 N.W.2d 263, 269 (Minn.2000) (observing that statutory sections within an act should be construed in light of each other). We may also appropriately consider the language of other statutes that address the same subject matter. *Milner*, 748 N.W.2d at 617.

Determining the viability of the certified class claim requires us to determine the application, if any, of the PWA and the MFLSA to the payroll deductions alleged.

In relevant part, the PWA requires an employer to obtain written authorization from an employee before making deductions from the employee's wages for "lost or stolen property, damage to property, or to recover any other claimed indebtedness." Minn.Stat. § 181.79, subd. 1. The statute also provides that an employee who has suffered unauthorized deductions may recover in a civil action twice the amount of the unauthorized deduction. *Id.*, subd. 2.

The MFLSA establishes minimum wage and overtime-pay requirements for employees covered by the act. *Milner*, 748 N.W.2d at 611. The MFLSA does not directly address deductions from wages, but it does exempt from overtime-pay requirements individuals who are "employed in a bona fide executive, administrative, or professional capacity." Minn.Stat. § 177.23, subd. 7(6). The act itself does not define employment in a "bona fide executive, administrative, or professional capacity," but it does authorize the Minnesota Department of Labor and Industry to promulgate rules to carry out the purposes of the act. Minn.Stat. § 177.28. Under those rules, individuals are employed in executive, administrative, or professional capacities if they perform certain types of duties and are paid a salary, which is defined to mean that an employee "is guaranteed a predetermined wage for each workweek." Minn. R. 5200.0211. *See* Minn. R. 5200.0190 (defining employment in executive capacity to require payment of a salary), .0200 (same for administrative capacity), .0210 (same for professional capacity). Thus, deductions are relevant because it is a defense to a claim for overtime pay under the MFLSA that an employee is exempt from the act, and improper deductions from pay may prevent an employer from claiming that an employee is exempt.

As noted above, in *Milner*, the court recognized a relationship between the MFLSA and the PWA:

> While the MFLSA addresses minimum wage and hour standards, the PWA addresses how often wages must be paid and establishes penalties for wages that are paid late. . . . Thus, together, these acts provide a comprehensive statutory scheme for wages and payment in Minnesota and should be interpreted in light of each other.

748 N.W.2d at 617.

Having considered the statutory framework, we now turn to the certified questions. Because our resolution of the first two certified questions is dispositive of the case, we do not reach the third.

### Question 1:

### Do the payroll deductions in this case implicate the PWA, specifically Minn.Stat. § 181.79 ?

Life Time, as defendant below, took the unusual position that it did in fact violate a statute, but that it was the PWA, rather than the MFLSA. The district court concluded that section 181.79 of the PWA is not applicable because "[the class members] did not voluntarily authorize Life Time to reduce their wages 'after the loss has occurred or the claimed indebtedness has arisen.'" Life Time asserts that its admitted failure to obtain authorization is precisely the conduct prohibited by Minn. Stat. § 181.79 and for which the statute provides a remedy. We agree that the district court erred by concluding that section 181.79 does not apply. But the conclusion that section 181.79 applies, without more, is of little significance. The pivotal question in this case is whether, as Life Time next asserts, the applicability of section 181.79 precludes application of the overtime-pay requirements of the MFLSA. We turn now to that question.

### Question 2:

*Does the availability of a remedy under Minn.Stat. § 181.79 of the PWA preclude a remedy under the MFLSA?*

Erdman asserts, and the district court found, that the class members were not exempt from the MFLSA because the deductions contemplated by, and actually made under, Life Time's bonus plans preclude a finding that they were paid a salary.

■■■ "Ordinarily, unless a statute provides that its remedy is exclusive, a party should not be prevented from bringing concurrent claims." *Abraham v. County of Hennepin*, 639 N.W.2d 342, 346–47 (Minn.2002) (holding that plaintiff could concurrently pursue claims under Minnesota whistleblower act and Minnesota Occupational Safety and Health Act based on same underlying facts). Nothing in the language of the PWA makes its remedy exclusive. *Cf.* Minn.Stat. § 363A.04 (providing that remedies under Minnesota Human Rights Act are exclusive for conduct prohibited by that act). Thus, when both acts apply, a plaintiff may seek relief under the PWA, the MFLSA, or both, subject to the prohibition against double recovery. *See Wirig v. Kinney Shoe Corp.*, 461 N.W.2d 374, 379 (Minn.1990) (prohibiting double recovery on parallel claims).

Relying on the principle that an agency may not adopt rules that conflict with statutes, Life Time asserts that there is a conflict between Minn.Stat. § 181.79 of the PWA and rules promulgated under the MFLSA, and that section 181.79 must control. *See, e.g., J.C. Penney Co., Inc. v. Comm'r of Econ. Security*, 353 N.W.2d 243, 246 (Minn.App.1984) (holding that rules contravene statutes to be invalid). More specifically, Life Time argues that it cannot be penalized, i.e., lose exempt status for its employees, under Minn. R. 5200.0211 for conduct that is permitted, with written authorization, by Minn.Stat. § 181.79. Thus, Life Time asserts that the class members' exclusive remedy must lie under Minn.Stat. § 181.79. Because Erdman has asserted a claim only under the MFLSA, not under Minn.Stat. § 181.79, Life Time argues that the complaint must be dismissed.

■■■ We do not agree that there is an irreconcilable conflict between the PWA and the rules promulgated under the MFLSA. They address different issues and are not inconsistent; it is possible to comply with both. Section 181.79 requires written authorization before an employer may make certain types of deductions from wages; it does not specifically authorize those deductions or insulate them from the impact of other statutes or rules. Conversely, the MFLSA rules do not prohibit payroll deductions; they merely preclude employers from claiming that their employees are exempt from overtime-pay requirements in certain circumstances when deductions are made.

Although we find no direct conflict between the PWA and the MFLSA rules, we nevertheless conclude that the MFLSA, when properly read in light of the PWA, does not apply to the class members because they were not "employees" within the meaning of the MFLSA and thus were exempt from its application.

■■■ As we noted above, the MFLSA exempts from its application employees who perform certain types of duties and are paid a salary. And an employee is paid a salary if he or she "is guaranteed a predetermined wage for each workweek." Minn. R. 5200.0211. Life Time asserts that it met this requirement by designating and paying guaranteed base salaries, and that the deductions from paychecks to recover unearned bonus advances did not

affect these guaranteed salaries. We agree that the class members were guaranteed a predetermined amount for each workweek.

■ Erdman and the district court's interpretation of the MFLSA reads into the statute and related rules a requirement that a salary be paid in regular increments, or, in other words, that the employee *receive* a regular paycheck, not subject to deductions. We reject this interpretation. The MFLSA is directed to the amounts of wages that must be paid. With the exception of overtime pay, neither the MFLSA nor the related rules expressly dictate *when* those wages must be paid.[2] The timing of payment is governed instead by the PWA. *See* Minn. Stat. § 181.101 (requiring payment of wages at least once every 31 days). Thus, we conclude that the MFLSA does not require the receipt of a regular paycheck. Our conclusion is consistent with the distinction drawn by the Minnesota Supreme Court's case in *Milner* between the MFLSA's "minimum wage and hour standards," and the PWA's focus on "how often wages must be paid and establish[ing] penalties for wages that are paid late." 748 N.W.2d at 617.

We acknowledge that this interpretation of the MFLSA dictates a result different from that obtained under the FLSA. *See Baden–Winterwood v. Life Time Fitness, Inc.,* 566 F.3d 618, 629–33 (6th Cir.2009) (holding that plaintiffs in parallel federal action were not paid a salary as a matter of law). This is because federal regulations provide that an employee is paid a salary if that "employee regularly *receives* each pay period ... a predetermined amount." 29 C.F.R. § 541.602(a) (2007) (emphasis added); *see also Baden–Winter-*

*wood,* 566 F.3d at 627 (noting that regulations focus on receipt of pay). In contrast, as noted above, the MFLSA rules require that exempt employees be *"guaranteed a predetermined wage for each workweek,"* not that such an amount be *received* each workweek. Minn. R. 5200.0211 (emphasis added). Based on this distinction, we conclude that reliance on federal authority is inappropriate here. *See Milner,* 748 N.W.2d at 614 (holding that "the FLSA is not dispositive ... because it is structured differently than the MFLSA").

## DECISION

Because Life Time guaranteed class members a predetermined amount of pay for each workweek, and Erdman does not dispute that the other requirements for exemption were met, we conclude that the district court erred by denying Life Time's motion for summary judgment. Accordingly, we reverse and remand for entry of judgment in Life Time's favor.

**Reversed and remanded.**

---

**2.** Overtime compensation must be paid within two paychecks after it is earned. Minn. R. 5200.0150.