**Sarah ERDMAN, individually and on behalf of others similarly situated, Appellant,**

v.

**LIFE TIME FITNESS, INC., Respondent.**

No. A08–1993.

Supreme Court of Minnesota.

Sept. 9, 2010.

Nicole T. Fiorelli, Dworken & Bernstein Co., L.P.A., Painesville, OH; and Steven E. Ness, Business Law Center, P.L.C., Bloomington, MN, for appellant.

Douglas R. Christensen, Michael J. Wahoske, Zeb–Michael Curtin, Dorsey & Whitney LLP, Minneapolis, MN, for respondent.

OPINION

PAUL H. ANDERSON, Justice.

Sarah Erdman worked for Life Time Fitness, Inc., from June 1, 2005 until January 31, 2006. Life Time classified Erdman as a salaried employee exempt from the overtime requirements of the Minnesota Fair Labor Standards Act (MFLSA). *See* Minn.Stat. § 177.21 (2008). At the end of 2005, Life Time made deductions from two of Erdman's paychecks in order to recover bonus overpayments it made to Erdman earlier in the year. Erdman objected to the deductions and commenced an action against Life Time, individually and on behalf of other similarly situated employees. In her action, Erdman alleges that because Life Time's compensation plan permitted deductions from an employee's weekly pay to recover bonus overpayments, Life Time improperly classified the affected employ-

ees as salaried employees and wrongly denied them overtime pay.

Both parties moved for summary judgment. The Hennepin County District Court denied Life Time's motion for summary judgment and granted summary judgment in favor of Erdman and the other employees on the issue of liability. The court then certified its summary judgment order for appeal as presenting questions that are important and doubtful. *See* Minn. R. Civ.App. P. 103.03(i). The court of appeals reversed the district court and remanded for entry of judgment in favor of Life Time. We affirm the court of appeals.

Appellant Sarah Erdman and the other similarly situated parties (class members) are 126 current and former executive and managerial employees of Life Time Fitness, Inc. Erdman worked as the head of the Spa Department at a fitness center owned and operated by respondent Life Time Fitness, Inc., in Savage, Minnesota. Life Time classified members of the class as exempt employees for purposes of the Minnesota Fair Labor Standards Act (MFLSA), Minn.Stat. §§ 177.21–.35 (2006), because it considered class members to be salaried employees. As a result, Life Time did not pay class members overtime when they worked more than 48 hours during any given week.

Under Life Time's compensation scheme, each class member received an annual or "base" salary and was eligible to receive an annual bonus based on her department's yearly performance. Though class members earned the bonuses on a yearly basis, Life Time paid bonuses monthly based on year-to-date performance. Life Time explained the bonus payment process and its rationale by stating that each class member's bonus was "not finally determined until year's end, but, to provide employees with more frequent payment opportunities rather than merely a year-end lump-sum, [the] estimated [bonus] amount is given out in advance in monthly installments, based on year-to-date results versus year-to-date goals."

Life Time's practice of advancing annual bonuses in monthly installments led to occasional overcompensation. Overcompensation occurred when some managerial employees could not sustain their departments' performance over the course of the year and ultimately did not earn all of the bonus compensation they had already received. Under the terms of Life Time's 2005 Compensation Plan, Life Time reserved the right to reclaim bonus overpayments through a reduction of an employee's paycheck. More specifically, the plan states: "If, during the year, performance drops to a level such that bonus payments made exceed the amount earned, Life Time Fitness reserves the right to reclaim the amount of the overpayment by reducing future semi-monthly base salary payments."

In November and December 2005, Life Time made deductions to the paychecks of 12 class members, including Erdman, to reclaim unearned bonuses previously paid. In total, four employees had one paycheck reduced, six employees had two paychecks reduced, and two employees had three paychecks reduced. Before making the deductions, Life Time notified these 12 employees that they had been advanced "significantly greater bonus payments than they had earned on a year-to-date basis" and that Life Time intended to deduct the overpaid bonus amounts from future paychecks. Life Time subtracted $500 from two of Erdman's paychecks, for a total deduction of $1,000. For example, on December 9, 2005, Erdman's paycheck showed that she was entitled to $1,375 in "salary" compensation and $235.11 in commissions, but she actually received $500

less than that total because Life Time reduced her check by $500 "to recover an earlier bonus overpayment." Because Life Time made deductions only to recover bonus overpayments, the class members always received, year-to-date, the base salary amount to which they were entitled.

Erdman commenced this action against Life Time in 2007, "individually and as a putative representative for a class action," arguing that Life Time's compensation plan violated the MFLSA. Erdman asserted that Life Time did not guarantee members of the class a predetermined wage for each workweek because their compensation plans allowed Life Time to make deductions from their paychecks. According to Erdman, because class members' wages were not guaranteed, they were not salaried employees for purposes of the MFLSA and that Life Time violated the MFLSA by failing to pay them overtime pay. Erdman alleged that Life Time's compensation scheme encouraged her and other similarly situated employees to work overtime hours to meet department goals in order to avoid paycheck deductions. Erdman moved for class action certification and the district court granted her motion.

Both parties moved for summary judgment. Life Time argued that it did not violate the MFLSA and was entitled to summary judgment because the class members were salaried employees exempt from the MFLSA's overtime payment requirements. Life Time claimed that Minn. Stat. § 181.79 (2008), rather than the MFLSA, addresses how an employer may make paycheck deductions, and therefore the class members should have sought a remedy for the paycheck deductions under that statute. Subdivision 1 of section 181.79 provides that employers may not make deductions from wages earned by an employee to recover for property loss or "claimed indebtedness running from employee to employer" unless the employee "voluntarily authorizes the employer in writing to make the deduction" after the loss or claim indebtedness has arisen. Subdivision 2 provides a remedy for employer violations of subdivision 1 equal to "twice the amount of the deduction or credit taken." Minn.Stat. § 181.79, subd. 2.

The district court denied Life Time's motion for summary judgment and granted the class members' summary judgment motion as to liability, concluding that Life Time's compensation plan violated the MFLSA. The court also concluded that issues of damages, calculation of overtime, attorney's fees and costs should proceed to trial. In the memorandum accompanying its order, the court stated that Life Time's compensation plan violated the MFLSA because "Life Time classified employees as exempt from overtime, when they were not actually receiving a salary as defined by the Minnesota Department of Labor." The court explained that because a class member's "salary payment" could be reduced, each class member was not "assured a predetermined wage for each workweek." The court also rejected Life Time's argument that the class members should have sought a remedy under Minn. Stat. § 181.79 because the court concluded that " 'bonus overpayments' " cannot "be considered 'claimed indebtedness running from employee to employer.' "

After the district court issued its order granting summary judgment in favor of the class members, Life Time requested that the court certify that order for immediate appellate review under Minn. R. Civ. App. P. 103.03(i). The court granted Life Time's motion and certified the questions presented by the summary judgment motions as "important and doubtful." The court of appeals agreed that the issues

were important and doubtful, and articulated the issues it agreed to consider:

> (1) does the Minnesota Payment of Wages Act, ... specifically Minn.Stat. § 181.79, apply to Life Time's conduct in this case; (2) if so, are the class members limited to a remedy under section 181.79, or do they also have a remedy under the MFLSA ...; (3) if recovery is available under the MFLSA, what is the scope of that remedy.

*Erdman v. Life Time Fitness, Inc.*, 771 N.W.2d 58, 61 (Minn.App.2009).

On the first issue, the court of appeals held that the district court erred when it concluded that the section 181.79 did not apply to Life Time's conduct. 771 N.W.2d at 62. *According to the court of appeals,* Life Time's conduct violated section 181.79's requirement that an employer obtain authorization from its employee before deducting that employee's wages for "claimed indebtedness." *See id.* at 62. Though the court of appeals answered the first certified question in the affirmative, it found that "the conclusion that section 181.79 applies, without more, is of little significance." *See id.* In other words, the court did not agree that if an employer's conduct violates Minn.Stat. § 181.79, it cannot simultaneously violate the MFLSA.

The court of appeals then addressed the second issue, whether "the applicability of section 181.79 precludes application of the overtime-pay requirements of the MFLSA." *See id.* The court of appeals concluded that section 181.79's remedy is not exclusive and, when both the MFLSA and section 181.79 apply, a plaintiff may seek relief under either statute. 771 N.W.2d at 63. But the court went on to conclude that although recovery under the MFLSA is not precluded if section 181.79 applies to an employer's actions, the class members were not entitled to a remedy under the MFLSA because Life Time had

not violated the MFLSA. The court reasoned that because "class members [were guaranteed] a predetermined amount of pay for each workweek," they were properly classified as exempt employees. *Id.* at 64. According to the court, because class members are exempt employees, the MFLSA does not require Life Time to pay those class members overtime pay. *Id.*

Because its resolution of the first two issues was dispositive of the case, the court of appeals did not reach the third issue. *Id.* at 62. The court held that the district court erred when it denied Life Time's summary judgment motion because Life Time did not violate the MFLSA. *Id.* at 64. We granted the class members' petition for review.

## I.

■■■ On an appeal from the denial of summary judgment, we ask two questions: (1) whether there are any genuine issues of material fact and (2) whether the lower courts erred in their application of the law. *Mumm v. Mornson*, 708 N.W.2d 475, 481 (Minn.2006). Here, neither party claims that there are any genuine issues of material fact. The parties disagree only about the interpretation of statutes and rules, and the application of those statutes and rules to the undisputed facts. This appeal therefore presents only legal questions for us to determine. *Cf. St. Otto's Home v. Minnesota Dep't of Human Services*, 437 N.W.2d 35, 39 (Minn.1989) ("When a decision turns on the meaning of words in a statute or regulation, a legal question is presented."). Because there are no genuine issues of material fact and we only need to determine whether the court of appeals erred its application of the law, our review is de novo. *See, e.g., Hertz Corp. v. State Farm Mut. Ins. Co.*, 573 N.W.2d 686, 688 (Minn.1998).

Our task on appeal is simplified by recognizing that if the class members were exempt employees as a matter of law, Life Time is entitled to summary judgment. If the risk of paycheck deduction for bonus overpayment rendered the class members non-salaried employees as a matter of law, they are entitled to summary judgment. We therefore focus on whether the class members were exempt employees under the MFLSA.

We begin by reviewing the MFLSA and Minn.Stat. §§ 181.01–.171 (2008), which is commonly referred to as the Minnesota Payment of Wages Act (PWA). The MFLSA "establishes minimum wage and overtime compensation standards that apply to all employees who are not specifically exempt from the requirements of the Act." *Milner v. Farmers Ins. Exch.*, 748 N.W.2d 608, 611 (Minn.2008). The MFLSA provides that "[n]o employer may employ an employee for a workweek longer than 48 hours, unless the employee receives compensation for employment in excess of 48 hours in a workweek at a rate of at least 1–1/2 times the regular rate at which the employee is employed." Minn. Stat. § 177.25, subd. 1 (2008). For purposes of the MFLSA, "Employee" "means any individual employed by an employer but does not include ... any individual employed in a bona fide executive, administrative, or professional capacity." Minn. Stat. § 177.23, subd. 7(6) (2006). Because executives, administrators, and professionals are not employees for purposes of the MFLSA, the MFLSA overtime requirement does not apply to these "exempt employees." *See* Minn.Stat. § 177.25 (2008).

Pursuant to Minn.Stat. § 177.28 (2006), the Minnesota Department of Labor and Industry has promulgated rules to carry out the purpose of the MFLSA. These rules further define what it means to be employed in an executive, administrative, or professional capacity. Minn. R. 5200.0190, .0200, .0210. An individual is an executive, administrator, or professional— an "exempt employee"—if she performs certain duties and receives a salary of at least $250 per week. *See* Minn. R. 5200.0190, .0200, .0210. Rule 5200.0211, subp. 1, provides:

A salary is not an hourly rate. *An employee is paid a salary if the employee, through agreement with an employer, is guaranteed a predetermined wage for each workweek.* An employee may still be salaried even if complete days absent are deducted from salary for reasons other than no work available. Should those deductions reduce the salary for the workweek below the minimum salary required by Minnesota Statutes, section 177.23, subdivision 7, clause (2), or parts 5200.0190 to 5200.0210, the employer will lose the exemption in that workweek.

(Emphasis added.)

The PWA is related to the MFLSA but addresses the timing and frequency of compensation. *See Milner*, 748 N.W.2d at 617 ("While the MFLSA addresses minimum wage and hour standards, the PWA addresses how often wages must be paid and establishes penalties for wages that are paid late.") Although Minn.Stat. § 181.79 is not technically part of the PWA, it addresses similar concepts regarding deductions to wages, as explained above.

With this background on the relevant law, we now address whether class members are exempt employees under the MFLSA and therefore not entitled to overtime pay. Employers need not pay bona fide executives, administrators, and professionals—those individuals who perform certain duties and receive a salary of at least $250 per week—overtime pay. *See*

Minn.Stat. § 177.25; Minn. R. 5200.0190, .0200, .0210, .0211. The parties do not dispute that class members held executive, administrative, or professional positions within the meaning of Minn.Stat. § 177.25, subd. 7. The parties dispute, however, whether class members received a "salary," as that word is defined in Rule 5200.0211: "An employee is paid a salary if the employee, through agreement with an employer, is guaranteed a predetermined wage for each workweek." The class members argue that Life Time did not guarantee them a predetermined wage for each workweek because Life Time could make deductions from their paychecks to recover bonus overpayments. According to the class members, this payment scheme rendered their pay "at risk" and "conditional." Life Time asserts that class members always received designated salaries through semi-monthly payments. Life Time also argues that even considering deductions for bonus overpayments, class members received no less than their predetermined wages for the year—explaining it deducted from paychecks what it previously overpaid class members rather than requiring them to repay those amounts with cash. It maintains the deductions did not change what class members earned in base pay. Life Time acknowledges that it failed to obtain class members' prior consent for the deductions, but asserts that this failure violated Minn. Stat. § 181.79, the penalty for which is limited to twice the amount of the deductions, rather than the MFLSA.

▇▇▇ When construing a statute, our goal is to ascertain and give effect to the intention of the legislature. *Am. Family Ins. Group v. Schroedl,* 616 N.W.2d 273, 278 (Minn.2000). "[W]e are to construe words and phrases according to their plain and ordinary meaning." *Id.* at 277; *see also* Minn.Stat. § 645.08 (2008). "A statute

should be interpreted, whenever possible, to give effect to all of its provisions. . . ." *Schroedl,* 616 N.W.2d at 277. We must also "read and construe a statute as a whole and must interpret each section in light of the surrounding sections to avoid conflicting interpretations." *Id.* "Finally, courts should construe a statute to avoid absurd results and unjust consequences." *Id.* at 278. We only look outside the statutory text to ascertain legislative intent if the statute's language is ambiguous. *Wynkoop v. Carpenter,* 574 N.W.2d 422, 425 (Minn.1998); *see also* Minn.Stat. § 645.16 (2008). With regard to interpreting the MFLSA specifically, we have said that when the words of the MFLSA are not explicit, we will read the MFLSA as a whole with the PWA, a related act that "'address[es] the same subject.'" *Milner,* 748 N.W.2d at 617 (quoting *Harris v. County of Hennepin,* 679 N.W.2d 728, 732 (Minn.2004)).

In deciding whether the class members were paid a "salary" within the meaning of Rule 5200.0211, we first look to the plain and ordinary meaning of the Rule. *See Schroedl,* 616 N.W.2d at 277. If the words of Rule 5200.0211 are not explicit, we may then read the Rule as a whole with the PWA. *Milner,* 748 N.W.2d at 617. Rule 5200.0211 provides: "A salary is not an hourly rate. An employee is paid a salary if the employee, through agreement with an employer, is guaranteed a predetermined wage for each workweek."

▇▇▇ It is undisputed that Erdman was contractually guaranteed $33,000 in wages per year. This salary was predetermined, or set in advance, and Erdman earned the same equal portion of this salary for each week she worked. The same was true for other class members, whose annual salary was also established by contract. Class members earned a set amount of compensation for each week they worked—the

appropriate proportion of their yearly salary—and this weekly wage did not depend on how many hours they worked. Life Time may have deducted amounts from paychecks, affecting class members' net pay, but class members' base-pay earnings remained static week to week. The deductions were based on previous bonus overpayments, and were not directly based on the number of hours worked. Moreover, year-to-date compensation for class members was never less than their year-to-date annual salary amount. We therefore conclude that Life Time guaranteed class members a predetermined weekly wage. Because the words of Rule 5200.0211 are explicit and unambiguous in this context, we do not need to look to Minn.Stat. § 181.79 or provisions of the PWA to interpret the Rule.

The class members argue that the court of appeals' interpretation of Rule 5200.0211—that the MFLSA does not require the receipt of a regular paycheck—is flawed because the court wrongly stated that it is sufficient to guarantee an employee a predetermined wage if she receives her promised salary by the end of the year. The class members note that Rule 5200.0211 requires that pay be guaranteed "for each workweek" and asserts that the language of the MFLSA does not "support the notion that paying an employee a stated annual amount—if none of the interim payments for the workweek were guaranteed—would satisfy the MFLSA's salary test." Whether an employer could satisfy the MFLSA by paying employees on such an irregular basis is, however, not the question before us. Here, Life Time issued semi-monthly paychecks and class members never received less than their promised compensation on a year-to-date basis.

The court of appeals noted that federal courts have come to a different conclusion with regard to Life Time's compensation plan under the federal Fair Labor Standards Act, 29 U.S.C. §§ 201–19 (2006) (FLSA). In *Baden–Winterwood v. Life Time Fitness, Inc.*, for example, the Sixth Circuit held that employees who had amounts deducted from their paychecks because of bonus overpayments were not exempt for purposes of the FLSA. 566 F.3d 618, 633 (6th Cir.2009). The FLSA provides that "an exempt employee must *receive* the full salary for any week in which the employee performs any work without regard to the number of days or hours worked." 29 C.F.R. § 541.602(a) (emphasis added). Under the FLSA, amounts cannot be deducted from an employee's salary. *See id.* Thus, the Sixth Circuit concluded that an employer may make deductions for absentee-ism or sick leave, but that the FLSA does not "allow[ ] for the reduction of guaranteed pay under a purposeful, incentive-driven bonus compensation plan." *Baden–Winterwood*, 566 F.3d at 633.

There is a difference in language between the FLSA and the MFLSA that is determinative. The court of appeals explained that its holding under the MFLSA was different from results "obtained under the FLSA. . . . because federal regulations provide that an employee is a paid a salary if that 'employee regularly receives . . . a predetermined amount,'" while the MFLSA requires that employees be guaranteed a predetermined wage to be exempt. *Erdman*, 771 N.W.2d at 64 (quoting 29 C.F.R. § 541.602(a) (2007)). We agree with the court of appeals' conclusion and note that there is no regulation in the MFLSA regarding deductions and the effect a paycheck deduction has on an employee's exemption status. And although the MFLSA addresses minimum wage and hour standards it does not address how often and when wages must be paid. *Milner*, 748 N.W.2d at 617. We conclude that

the difference in language between the two statutes is significant and, like the court of appeals, we conclude that federal cases interpreting the FLSA are not helpful in determining the issue. *Milner*, 748 N.W.2d at 617. ("We decline to look to the federal FLSA, as it is structured differently from the MFLSA.").

Under the MFLSA, executives, administrators, and professionals are exempt from overtime pay requirements if they perform managerial duties and receive a salary, rather than an hourly wage. Under Rule 5200.0211, "[a]n employee is paid a salary if the employee, through agreement with an employer, is guaranteed a predetermined wage for each work week." We conclude that because the class members' weekly wage did not depend on the hours worked, and the class members received no less than their promised compensation on a year-to-date basis, they were "guaranteed a predetermined wage for each workweek" through agreement with Life Time. *See* Rule 5200.0211. Accordingly, we hold that the Life Time correctly classified the class members as exempt employees and Life Time did not violate the MFLSA by failing to pay class members overtime. We affirm the court of appeals and remand to the district court to enter summary judgment in Life Time's favor.[1]

Affirmed.

STRAS, J., not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.

---

1. Because we decide this case on the plain language of the MFLSA and Rule 5200.0211, and therefore did not consider Life Time's arguments regarding Minn.Stat. § 181.79, the class's motion to strike parts of Life Time's brief dedicated to those arguments is moot.